FRANTA et al. v. BOHEMIAN ROMAN CATHOLIC CENTRAL UNION OF THE UNITED STATES OF AMERICA, Appellant.

Division One, June 29, 1901.

Life Insurance: FRATERNAL BENEFICIARY SOCIETY: CHURCH CORPORATION: REQUIREMENTS OF BY-LAWS: BILL OF RIGHTS. Under the statutes of this State in reference to fraternal beneficiary societies, persons of any religious denomination may form a corporation for the purpose of fraternal insurance, and such corporation may limit its membership to persons of the same religious belief, and may sus-

pend or expel a member for failure to observe a duty prescribed by the church and required by the law of the corporation. It may require, as a condition subsequent to his retaining his membership in the corporation, that he continue in good standing in the church and in the observance of its laws, and such requirement does not violate section five of the Bill of Rights.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED AND REMANDED.

*Daniel Dillon* and *John Dillon* for appellant.

(1) That the constitution and laws of organizations such as defendant, are binding on its members, is not an open question in this State. Coleman v. Knights of Honor, 18 Mo. App. 194; Smith v. Knights Father Mathew, 36 Mo. App. 184; Grand Lodge, etc., v. Sater, 44 Mo. App. 452; Marshall v. Supreme Lodge, 59 Mo. App. 87; State ex rel. v. Grand Lodge, 70 Mo. App. 466; Ellerbe v. Faust, 119 Mo. 653. (2) (a) These laws are not unreasonable. The constitution of the society provided that none but Catholics could belong to it. It is then alleged by the laws of the Catholic church all members thereof are required to do certain things. And these laws of the society required its members to do these same things which, as Catholics, they are required to do, and provided for suspension for failure to do as the laws required. To maintain the society according to its constitution, these laws were almost a necessity. Without them members might cease to be Catholics and still retain their membership, and in course of time instead of being a society composed exclusively of Catholics, as its constitution provides, it would become a society composed of all religious denominations. El-

Vol 164 mo—20

lerbe v. Faust, 119 Mo. 656.     (b)     The statutes in relation
to formation of these societies are very broad and liberal, and
they are exempted from the provisions of the insurance law of
the State.     Secs. 2821, 2822, 2823 and 2831, R. S. 1889.
Section 2821 provides that the articles of agreement may be
organic regulations or a constitution or other form of associa-
tion.     Section 2831 expressly recognizes the right of these as-
sociations in their charter (charter here means the constitu-
tion or other form of association mentioned in section 2821)
to provide for admission of new members and how they shall
be admitted and prescribe their qualifications, and authorizes
by-laws to be made covering these points, if not already pro-
vided for in the charter.     It also authorizes by-laws for the ex-
pulsion of members guilty of any offense which affects the in-
terests or good government of the corporation, provided such
by-laws be conformable to the charter and shall not impair or
limit any provision thereof or enlarge its scope, and shall not
be contrary to the provisions of the Constitution or laws of this
State.     Theobald v. Supreme Lodge, 59 Mo. App. 87.     (c)
The constitution and by-laws of these societies form part of
the contract or agreement between the society and its mem-
bers, and are binding on every member and determine his
rights under his certificate of membership, and the rights se-
cured under a certificate of membership are contingent on the
member performing his part of the agreement, that is, abiding
by and conforming to the constitution and by-laws of the so-
ciety.     Hitter v. St. Aloysius Society, 4 Ky. L. R. 871; Matt
v. Roman Catholic M. P. Society, 40 Iowa, 455; Stack v.
O'Hara, 89 Pa. St. 253; Hennessy v. Walsh, 15 Am. Law.
Reg. 277.

Koehler, Reiss & Lesinsky and W. R. Schery for respond-
ents.

(1)   The demurrer was properly sustained.  All corporate laws must be reasonable, and must conform to and be consistent with the Constitution and laws of the State.    (a)  That an unreasonable by-law is void is an elementary proposition. The by-law in question here is unreasonable. People ex rel. v. St. Franciscus Ben. Soc., 24 How. Pr. 216; Mulroy v. Knights of Honor, 28 Mo. App. 473; Niblack on Mutual Ben. Societies (Ed. 1888), p. 30, sec. 26; Bacon on Benefit Societies (New Ed. 1894), p. 136, sec. 85; State ex rel. v. Union Merchants Ex., 2 Mo. App. 102; Cartan v. Father Mathew United Ben. Soc., 3 Daly (N. Y.), 20; People ex rel. v. Medical Society, 24 Barb. (N. Y.), 571; Commonwealth v. St. Patrick's Soc., 2 Binney (Penn.), 441; Angell & Ames on Corporations (11 Ed.), p. 387, sec. 347.    (b)   The Constitution provides: "That no human authority can control or interfere with the right of conscience; that no person ought by any law to be molested in his person or estate on account of religious persuasion or profession."    Art. 2, sec. 5, Constitution.    The by-law in question exacts the observance and performance of certain religious duties upon the pain of forfeiture of property interests.    This is clearly in violation of the constitutional provision above quoted.    It follows that the by-law is void because in derogation of the Constitution of the State.    People ex rel. v. St. Franciscus Ben. Soc., 24 How. Pr. 216; People ex rel. v. Medical Society, 24 Barb. (N. Y.), 574; Niblack on Mutual Benefit Societies (Ed. 1888), p. 23, sec. 20; Bacon on Benefit Societies (New Ed. 1894), p. 135, sec. 84.    (c)  The defendant is a corporation organized, existing and operating under the laws of the State of Missouri relating to fraternal-beneficial associations.    As such it has only the power to make by-laws for the purposes enumerated in the statutes.    The laws of this State applicable to this class of corporations do not authorize the making of by-laws such as the one in question.

Sec. 1403, R. S. 1899; People ex rel. v. Franciscus Ben. Soc., 24 How. Pr. 216; People ex rel. v. The Medical Society, 24 Barb. (N. Y.) 575; Niblack on Mut. Ben. Soc. (Ed. 1888), p. 53, sec. 44. (2) Defendant is a fraternal-beneficial society as distinguished from a mere religious society. Members, to whom certificates are issued, acquire property rights. Any by-law not necessary to preserve and protect such rights is unreasonable and void. Art. 2, sec. 8, Constitution.; People ex rel. v. St. Franciscus Ben. Society, 24 How. Pr. 216; Mulroy v. The Knights of Honor, 28 Mo. App. 463, 473; Commonwealth v. St. Patrick's Ben. Soc., 2 Binn. (Pa.), 441; Niblack on Mutual Benefit Societies (Ed. 1888), p. 30, sec. 26; Bacon on Benefit Societies (New Ed. 1894), p. 137, sec. 85.

VALLIANT, J.—Plaintiffs are the minor children of Peter Franta, deceased, who in his lifetime had been a member of the defendant corporation, which is a fraternal-beneficiary society, incorporated under the laws of this State, and the suit is to recover on a benefit certificate or quasi life insurance policy for $1,000 issued by the society to plaintiffs' father.

The answer of the defendant pleads that it is an association of persons who are members of the Roman Catholic church, that by its constitution no person can be a member who is not a Roman Catholic and who does not perform his duties as required by the church, and that one of those duties is to go to confession and receive the sacrament of the holy communion every year during Easter time, and the constitution and by-laws require every member to perform that duty and to produce to the society a certificate of the priest that he had done so, or failing therein the society has the authority to suspend him indefinitely or for such time as it may deem just, first giving him an opportunity to clear himself of the charge. That every applicant for membership in the association is required

to sign an agreement that he will be governed by its consti-
tution and laws, and the plaintiffs' father signed such agree-
ment and was admitted to membership thereupon.    That plain-
tiffs' father did not receive the sacrament of the holy commun-
ion during Easter in 1896, and was charged in the society with
that omission, and in a regular meeting he admitted the truth
of the charge, and thereupon, in due course, the society sus-
pended him from membership indefinitely and he died while
so suspended.    That by the laws of the order a suspended mem-
ber lost all benefits during his suspension.

The plaintiff demurred to that plea, and the court sus-
tained the demurrer on the ground that the provision of the
law of the defendant society was in violation of section 5, arti-
cle 2, of the Constitution and defendant not pleading further,
judgment for the plaintiffs was rendered for $1,069.16, from
which the defendant appeals.

The only question in the case is, whether persons of any
religious denomination may form a corporation under our stat-
utes in reference to fraternal-beneficiary societies and by its
laws limit its membership to persons of the same religious be-
lief and suspend or expel a member for failure to observe a
duty prescribed by the church and required by the law of the
corporation.

The clause of our Constitution which the circuit court ad-
judged to have been violated by the law of the defendant cor-
poration is section 5 of the Bill of Rights, and is in these
words:   "That all men have a natural and indefeasible right
to worship Almighty God according to the dictates of their own
conscience; that no person can, on account of his religious opin-
ions, be rendered ineligible to any office of trust or profit under
this State, nor be disqualified from testifying, or from serving
as a juror; that no human authority can control or interfere
with the rights of conscience; that no person ought, by any

law, to be molested in his person or estate, on account of his religious persuasion or profession; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, nor to justify practices inconsistent with the good order, peace or safety of this State, or with the rights of others."

When we consider the purely voluntary character of the society in question, that no one can be brought into its membership but by his own free will, nor restrained to keep his membership when he wishes to withdraw, that he can be admitted only on terms and conditions upon which he and the society mutually agree, that he can be expelled or suspended only in conformity to laws of the society which he has agreed he would obey and submit to, and when we also consider that by expulsion or suspension he is deprived of no right or privilege which he holds independent of the society, which was not created by the society itself, and which in so far as it may have assumed the character of a right is purely contractual and depends for its continuance on the observance of the terms of the contract; it would be a strange construction of the clause of the Constitution guaranteeing freedom of conscience if we should interpret it to mean that one under those circumstances was entitled to receive the fruits of his contract while declining, from scruples of conscience, to perform the conditions which entitle him to the same.

The defendant corporation is organized under article 10, chapter 42, R. S. 1889. Fraternal-beneficiary corporations necessarily have the character of fraternal or social community; that is, their foundation, the pecuniary benefit or quasi insurance, that the law allows to be contracted for, is merely incidental to the social or fraternal character. The language of the statute specifying the purposes for which corporations under that article may be formed is: "For benevolent, religious, sci-

entific, fraternal, beneficial or educational purposes." Insurance is not one of the fundamental purposes for which a corporation under that article may be formed. When the purpose is to form a life insurance company on the assessment plan, the organization must be effected under another statute enacted for that purpose. Having prescribed the purposes for which such corporations may be formed and the procedure for their organization, the statute goes on to confer upon fraternal-beneficiary associations the power to make provision by assessments to pay benefits to the families or dependants of deceased members, and to their sick or disabled members living, but it avoids the word "insurance" in that connection, and expressly exempts such societies from the operation of the insurance laws of the State. Benefit certificates issued by such societies have some of the characteristics of life insurance policies and are enforced in the courts according to the contract, but there is something more in the contract evidenced by such a certificate than there is in that evidenced by an ordinary life insurance policy.

These societies are sometimes referred to as organized for charitable purposes, but death losses on such benefit certificates are not to be classed under that head, for they are enforced according to the terms of the contract, and even sick benefits do not fill the legal meaning of the word "charity," because they are limited to the members of the society. An act to be charitable in a legal sense must be designed for "some public benefit open to an indefinite and vague number; that is, the persons to be benefited must be vague, uncertain and indefinite, until they are selected or appointed to be the particular beneficiaries of the trust for the time being." "Money contributed by the members of a club to a common fund, to be applied to the relief and assistance of the particular members of the club when in sickness, want of employment, or other disability is not

a charitable fund to be controlled by a court of equity." [Perry on Trusts, sec. 710.]  It is not charity to give to your friend because of friendship, nor to your associate in a society because of your duty imposed by the laws of that society.  Charity in the legal sense has been illustrated by reference to the custom of the ancient Jews, to leave at random a sheaf of corn here and there in the field for the poor gleaners who followed the harvesters, it being unknown who would get it.  Therefore, there is nothing in the idea of a charitable trust to influence the decision in this case.  If the plaintiffs are entitled to recover it must be upon the theory that their father held a contractual relation with the defendant corporation at the time of his death which entitled him to membership therein and the benefits incident to such membership.

Fraternal-beneficiary societies appear to have received the approbation and encouragement of the legislatures in many of the States and have greatly increased in number and in the volume of their peculiar insurance within the last twenty years. Such has certainly been their history in Missouri.  This encouragement has arisen from the fact that in their dealings with the families of their deceased members they have not been influenced alone by the strict letter of their contractual obligation, but also to a great extent by that spirit of fraternity which is the life of their organization.  It not infrequently happens that the dues or assessments of an unfortunate sick member are paid by the members of his subordinate lodge. or out of its treasury, to keep him in good standing, in the face of impending death, for the very purpose of securing the payment of the benefit fund to his family.  Such is not the conduct of mere strangers with each other or of those who are bound only by the ties of a contract of insurance.  And the law recognizes in that spirit of fraternity not only a guaranty of life insurance when the member dies, but also the development of better character

among the members while living, and thus the State derives a moral benefit.

But the idea of fraternity on which these societies are founded is not that of the mere abstract principle, which includes all mankind; it is rather fraternity in the concrete, embracing only those who have some feature common to themselves but not universal, which renders them for that reason a separate and peculiar band of friends or associates, distinct from the rest of the world. Such a peculiar quality common to them but distinguishing them from mankind in general, is absolutely essential; to a fraternal society, and it alone distinguishes these societies in their conduct from life insurance companies on the assessment plan.

In the invitation that our statute gives to the people to form such societies, it does not specify what sentiments or bonds of union may be used for that purpose. Whatever sentiment a number of men may have in common and peculiar to themselves, which draws them together for a purpose that is not immoral or inimical to the State, may be made by them essential to admission to membership in their society, and it follows as a corollary, it may be made essential to retention of such membership. If men of a particular religious faith prefer to be associated with those of that faith and desire to form a corporation composed alone of members who are in harmony with them on that subject, there is nothing in our law to forbid them. But a fraternal-beneficiary society founded on and limited to such membership is in no sense a religious corporation. It is not formed to teach or propagate the religious faith, but to cultivate the spirit of fraternity among its members who are of that faith, and incidentally to provide a pecuniary benefit for them and their families as the statute contemplates. And if the corporation may lawfully prescribe, as a condition precedent to admission to membership, that the applicant be one who

is a member in good standing of a certain church and who conforms to its teachings, it may also prescribe as a condition subsequent to retaining his membership in the corporation that he continue in good standing in the church and in observance of its requirements. The corporation does not thereby become a propaganda of religious dogma, but only secures to its members that exclusive congenial association which it promised.

The Masonic fraternity is generally reputed to be a society having for one of its objects at least the practice of charity in its broadest sense, yet a corporation known as the United Masonic Benefit Association, which was only a life insurance company on the assessment plan and in no sense a charitable society, had prescribed as a qualification for membership that the applicant be a Mason in good standing, and it was held that a by-law of the corporation declaring that upon a member thereof ceasing to be a member in good standing of the Masonic fraternity, he, *ipso facto,* forfeited his membership in the corporation, was valid. [Ellerbe v. Faust, 119 Mo. 656.] In that case the purpose of the corporation was life insurance, and it had nothing to do with teaching or propagating the tenets of Masonry, yet it was held that as it was a mutual society and those who had organized and composed it had seen fit to limit their association to Masons in good standing, no one not belonging to that class could come into it, or being in, no one ceasing to be of the class could remain in. The clause of the Constitution invoked in the case at bar as much protects a man in refusing to be or to remain a Mason against his conscience, as it does in refusing to be or to remain a member of a particular church.

The law is not greatly concerned in guarding a man in that freedom of conscience which would permit him to enter into a contract and keep it to the extent that it suits him, and repudiate it otherwise. If the father of the respondents in this case acquired any rights which he or they could enforce against

this corporation, it was by virtue of an express contract which prescribed the terms upon which he was admitted to membership, and as expressly prescribed the conditions necessary to be observed on his part to continue that membership, and the terms of continuing were exactly the same as the terms of admission. He expressly represented as a condition to his admission that he was a member of the Roman Catholic church, and that he observed its laws and would continue to do so while he remained a member of the corporation, and that if he should cease to conform to the laws of the church in the particular mentioned in the answer, he expressly agreed that the corporation might suspend or expel him and thereby exclude him from its benefits. Under the Constitution and laws of this State a man can not be coerced into observing the sacraments of any church, and even if he should enter into a solemn contract to do so, he is free to break the contract, and for breaking it he can not be deprived of any right that he has independent of it. But if by the contract a special benefit is created for him, he can not break the contract and have the benefit too. The Court of Appeals of Kentucky, passing on exactly the question we are now discussing, said: "But apart from this, we can not see that appellee's rules are in any way inconsistent with the Constitution of Kentucky. The plaintiff never acquired the right to be thus watched and cared for in sickness, and to have his family provided for after his death, except upon the condition that he perform certain religious duties required of members of the Roman Catholic church. Those duties were to be performed every year during his membership in order to keep alive the corresponding obligation of his fellow members. This right was at most but a conditional one, and has never been 'diminished' by any act of the society. . . . . . To compel them (other members of the society) to watch and care for plaintiff in times of sickness and contribute to support of his family after death, when

In Re Excelsior Mfg. Co. Assignment.

they have agreed to do this for those who remain true to their church, would be to disregard and trample upon that mutuality which lies at the foundation of all contracts. . . . . The religious liberty of every denomination in this land demands that no such principle as this be declared as the law of Kentucky." [Hitter v. St. Aloysius Society, 4 Ky. L. R. 871.] And to like effect also is Matt v. Roman Catholic, etc., Society, 70 Iowa, 455. If any court of last resort has ever held to the contrary, our attention has not been drawn to the case.

The facts stated in the defendant's plea constituted a complete defense to the plaintiffs' cause of action, and the court erred in sustaining the demurrer. The judgment is reversed and the cause remanded to the circuit court to be proceeded with according to the law as herein expressed. All concur.