[L. A. No. 6059. Department One.—February 2, 1920.]

In the Matter of the Estate of VICTOR DOL, Deceased. SOCIETE FRANCAISE DE BIENFAISANCE MUTUELLE DE LOS ANGELES, Respondent, v. FRANK P. FLINT et al., etc., Appellants.

[1] CORPORATIONS—SOCIETY CONDUCTING PRIVATE HOSPITAL—ORGANIZATION NOT A CHARITABLE SOCIETY.—A society organized as a corporation in 1862 under the provisions of chapter 8 of the act of April 22, 1850, for the purpose of securing mutual assistance to its members in case of sickness without payment other than of monthly dues, and which established a hospital and employed physicians, is not a charitable or benevolent society within the meaning of section 1313 of the Civil Code.

[2] ID.—ADMISSION OF NONMEMBERS AS PAY-PATIENTS—ELIGIBILITY TO MEMBERSHIP—CHARACTER OF SOCIETY NOT CHANGED.—Neither the admission to the hospital of nonmembers as pay-patients at prices to be agreed on, nor the fact that all white persons were eligible to membership is sufficient to give such corporation the character of a charitable or benevolent society, under section 1313 of the Civil Code.

[3] CHARITABLE USE—PUBLIC BENEFIT.—One of the essential features of a charitable use is that it shall be for the public benefit, either for the entire public or for some particular class of persons, indefinite in number, who constitute a part of the public.

3. As to what are charitable uses and trusts, note, 63 **Am. St. Rep.** 248.

[4] CORPORATIONS ORGANIZED UNDER ACT OF 1850—NATURE OF.—The language of the first section of chapter 8 of the act of 1850 (Stats. 1850, p. 373, sec. 175), providing that it shall be lawful for all "churches, congregations, religious, moral, benevolent, literary or philanthropic associations or societies," to become incorporated under the provisions of the act, does not justify the conclusion that all corporations organized under the act are, *ipso facto*, charitable or benevolent associations or corporations.

[5] ID.—DETERMINATION OF CHARACTER OF CORPORATION—CONTROLLING FACTORS.—The character of a corporation organized under the act of 1850, either as a *de facto* corporation or as a voluntary association, assuming that the act does not authorize the formation of any corporation other than a charitable one, is to be determined by the terms of its articles of incorporation and its by-laws and its conduct and acts in pursuance thereof.

[6] ESTATES OF DECEASED PERSONS—WILL—BEQUEST TO CHARITABLE USE—CONSTRUCTION OF CODE.—The fact that makes a bequest void under section 1313 of the Civil Code is that it is made to a charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses within thirty days before the death of the testator, and the purpose in mind of the testator and his motive are alike immaterial.

[7] ID.—BEQUEST TO FRENCH HOSPITAL—TRUST NOT CREATED—CONSTRUCTION OF WILL.—A bequest unto the "French Hospital of the City of Los Angeles" of the sum of five thousand dollars makes the money the absolute property of the hospital, and the language does not impose any trust.

[8] ID.—CORPORATION ORGANIZED UNDER ACT OF 1850—RIGHT TO TAKE BEQUEST BY WILL.—A corporation organized under the act of 1850, which act authorized it to take gifts of real or personal property, may take a bequest by will, where it has not elected to continue under the code as provided in section 288 of the Civil Code.

APPEAL from an order of distribution of the Superior Court of Los Angeles County. James C. Rives, Judge. Affirmed.

The facts are stated in the opinion of the court.

Flint & MacKay and Donald Barker for Appellants.

Carroll E. King, Henry T. Gage and W. I. Foley for Respondent.

Sloss, Ackerman & Bradley and Walter Loewy, *Amici Curiae.*

SHAW, J.—This is an appeal by the executors of the will of Victor Dol, deceased, and by the residuary legatees of the estate under said will, from an order distributing to the respondent the sum of five thousand dollars given to said respondent by the terms of said will.

The will of the decedent was executed on Februay 14, 1911, and he died on March 13, 1911, less than thirty days thereafter. The contention of the appellants is that the respondent is a charitable or benevolent society or corporation, and consequently that any devise to such a coporation made within thirty days prior to the death of the testator is void under the provisions of section 1313 of the Civil Code. The part of the section in controversy reads as follows: "No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator; . . . and all dispositions of property made contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin, or heirs, according to law."

The defendant was organized as a corporation in 1862, under the provisions of chapter 8 of the act of April 22, 1850 (Stats. 1850, p. 373), entitled, "An Act Concerning Corporations." Its articles of incorporation contained the statement "that the objects of said society should be mutual assistance to the members thereof in case of sickness." The by-laws declared that the society was "established for the only purpose of mutual assistance in case of sickness." They further provided that all persons of the white race of good health, sound mind, and good morals could be admitted as members of the society; that, in order to become a member of the society, the applicant must pay an admission fee varying from three dollars to twenty dollars, according to age; that all members should pay monthly dues varying from fifty cents to two dollars, according to age, and that failure to pay dues should forfeit the rights of membership. The society established a hospital and employed physicians and the by-laws in effect provided that

members should be entitled to admission to the hospital and medical treatment therein on depositing one week's charges in advance, and to visits by the society physician at their homes. Other persons, not members, could be admitted to the hospital on payment of such sum as the directors should exact.

It will be observed that no person is to receive any benefit from the society except members thereof and such others as should be admitted to the hospital upon the payment of an agreed compensation.

[1] We are of the opinion that the society is not a charitable or benevolent society within the meaning of section 1313. The proposition is settled by the decision in *Brown v. La Societe Francaise De Bienfaisance Mutuelle of San Francisco,* 138 Cal. 475, [71 Pac. 516]. That was an action against the defendant society to recover damages for alleged unskillful conduct of the defendant's surgeon in setting the plaintiff's broken leg. In determining the liability of the defendant it became necessary to determine whether or not it was a charitable society or corporation. An examination of the copy of the by-laws of that society contained in the record of that case shows that in all essential particulars they were the same as those of the respondent here. That society was incorporated in 1854, under the same law. The by-laws of the respondent here appear to have been substantially copied from those of the San Francisco society and they are certainly no more favorable to the theory that it is a charitable corporation than the other. In the Brown case the court said that from the by-laws it appeared that " 'the society is established on the basis of mutuality for the treatment of sick members,' or, as more specifically provided, for the purpose of securing to its members (without payment otherwise than of dues) medical and surgical treatment, including the services of its physicians, surgeons, apothecaries, dentists, nurses, etc., and also medicines. Nor do we find in it any provision for assistance to others, except to paying patients, or sick persons not members, admitted to treatment for agreed compensation. It is therefore merely an association for mutual profit or benefit, similar in its essential nature to other societies formed for such purposes." Referring to the original by-laws the court said: "These, indeed, per-

mit, and even contemplate, the exercise of charity as one of the aims of the society, but there is nothing in them requiring the application of the funds of the society to such purposes (*Donnelly* v. *Boston Catholic Cemetery,* 146 Mass. 166, 167, [15 N. E. 505]; nor can the funds contributed by the members be regarded otherwise than as, beneficially, their own property. (*Coe* v. *Washington Mills,* 149 Mass. 547, 548, [21 N. E. 966].)'' The same principle is stated in *Gorman* v. *Russell,* 14 Cal. 531. Referring to an organization known as the ''Riggers and Stevedores Union Association of San Francisco,'' which was unincorporated, the court said that it was ''a voluntary association formed for the benefit of the members of it,'' and further, that ''a number of the members of a particular avocation meet for mutual benefit and protection, and prescribe rules for the government of the society thus organized. They agree that each shall contribute a certain fixed sum to the common treasury, and that the sum shall be applied, in a certain event, as in sickness, etc., to the relief of the necessities or wants of the individual members or of their families. This is not a charity any more than an assurance society against fire, or upon life, is a charity. It is simply a fair and reciprocal contract among the members to pay certain amounts, in certain contingencies, to each other, out of a common, fund.'' The fact that the society there involved was unincorporated makes no essential difference. The members of the corporation here involved are interested therein substantially in the same way as the members of a voluntary association or partnership formed for the same object are interested. No sound distinction exists on this ground. In each case the arrangement partakes of the nature of a contract whereby, for the dues and fees agreed upon and paid, the members receive the medical treatment to be given by the association at the expense of the common fund thus accumulated. [2] Such a society, whether incorporated or not, is not doing charitable work, but is merely rendering the consideration agreed upon in the contract between it and its members.

There is another reason which forbids the conclusion that the respondent is a charitable society or corporation, even if its funds come not solely from charges against its members and patrons. [3] One of the essential features of a char-

itable use is that it shall be for the public benefit, either for the entire public or for some particular class of persons, indefinite in number, who constitute a part of the public. The persons to be benefited must consist of "the general public or some class of the general public indefinite as to names and numbers." (*Estate of Coleman,* 167 Cal. 214, [Ann. Cas. 1915C, 682, 138 Pac. 993]; *Estate of Lennon,* 152 Cal. 327, [125 Am. St. Rep. 58, 14 Ann. Cas. 1024, 92 Pac. 870].) In *Estate of Cogswell,* 113 Cal. 136, [35 Am. St. Rep. 269, 45 Pac. 270], referring to the claim that a trust for the benefit of the boys and girls of California was void for uncertainty because the particular boys and girls were not capable of designation, the court said: "It should scarcely be necessary to observe that, when the class has been designated, this very vagueness and uncertainty, and indefiniteness as to individuals and numbers, is a necessary and essential element to the creation of a valid charitable trust." The court quoted the following from *Russell* v. *Allen,* 107 U. S. 167, [27 L. Ed. 397, 2 Sup. Ct. Rep. 330, see, also, Rose's U. S. Notes], regarding the essentials of charitable trusts: "They may, and indeed must, be for the benefit of an indefinite number of persons, for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness which is one characteristic of a legal charity." In *Estate of Sutro,* 155 Cal. 736, [102 Pac. 920], the opinion quotes the full definition of a charity given in *Jackson* v. *Phillips,* 96 Mass. (14 Allen) 556. The definition begins with the statement that "A charity, in the legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons." With regard to the full definition there given, this court said that it "must be read with the opening phrase constantly in mind that the benefit is for 'an indefinite number of persons,' and not for any particular person or persons, and it must be for all persons falling within a described class, indefinite in number." There is no force in the argument of the appellants that the persons who are entitled to treatment in the hospital of the respondent society are indefinite in number because the number of members varies from time to time, or because all white persons are eligible for membership. Under its articles and by-laws no one is entitled to the benefits who does not make an applica-

tion, pay the initiation fee, become admitted as a member and thereby become a party to the common contract, except those who, not being members, are treated for an agreed compensation as in any other hospital. Many other cases may be cited which support the foregoing propositions. As to corporations for the benefit of members, see *Young Men's etc. Soc.* v. *Fall River,* 160 Mass. 409, [36 N. E. 57]; *Bolton* v. *Bolton,* 73 Me. 303; *Burke* v. *Roper,* 79 Ala. 142; *State Council etc.* v. *Board of Review,* 198 Ill. 441, [64 N. E. 1104]; *Newport* v. *Masonic Temple Assn.,* 108 Ky. 339, [49 L. R. A. 252, 56 S. W. 405]; *St. Clement* v. *L'Institut Jacques Cartier,* 95 Me. 493, [50 Atl. 376]; *Franta* v. *Bohemian etc. Union,* 164 Mo. 311, [86 Am. St. Rep. 611, 54 L. R. A. 723, 63 S. W. 1100]; *Susman* v. *Y. M. C. A.,* 101 Wash. 493, [172 Pac. 554]; *Morning Star Lodge* v. *Hayslip,* 23 Ohio St. 146; 11 Cor. Jur. 305. As to the necessity that the beneficiaries be indefinite in number, see *Fay* v. *Howe,* 136 Cal. 601, [69 Pac. 423]; *Estate of Upham,* 127 Cal. 95, [59 Pac. 315]; *Spence* v. *Widney,* 5 Cal. Unrep. 516, [46 Pac. 466]; *Estate of Hinckley,* 58 Cal. 488; 11 Cor. Jur. 340.

Appellants contend that the character of the corporation is conclusively determined by the fact that it was organized under chapter 8 of the act of 1850, which, as they claim, provides for the incorporation of charitable associations only. The first section of the chapter (Stats. 1850, 373, sec. 175) provides that it shall be lawful for all ''churches, congregations, religious, moral, benevolent, literary or philanthropic associations or societies,'' to become incorporated under the provisions of the act. [4] We do not think this language justifies the conclusion that all corporations organized under the act are, *ipso facto,* charitable or benevolent associations or corporations. Corporations of the character named may be either charitable or not, according to the powers they have under the provisions of their articles and by-laws, and their purposes as therein specified. On that subject the statute is silent. In *Stewart* v. *California etc. Assn.,* 178 Cal. 419, [176 Pac. 47], the court said on this subject that ''the declaration in the articles alone are insufficient to establish the character of the St. Helena Hospital as a public charity, and the evidence of the manner in which it was conducted shows that it was not,'' and again, ''the character of the in-

stitution is to be determined, not alone by the powers of the corporation as defined in its charter but also by the manner of conducting the hospital.'' (See, also, *Bolton* v. *Bolton, supra.*) **[5]** If it should be objected that the statute does not authorize the formation of such a corporation as the respondent, the answer is that its character, either as a *de facto* corporation, or as a voluntary association, is nevertheless to be determined by the terms of its articles and by-laws and its conduct and acts in pursuance thereof, and that they show that it is not a charitable or benevolent organization.

There is no force in the argument that neither the articles of incorporation nor the by-laws appear to contemplate the making of profits by the hospital or the payment of dividends to the members. Whether intended to produce profits or not, it is clear that the property was to be used for the benefit of members only and not for charity. In *Brown* v. *La Societe etc., supra,* on this point the court said: ''Nor can the funds contributed by the members be regarded otherwise than as, beneficially, their own property.'' If the society should at any time dissolve, there could be no doubt that the trustees would hold its funds, property and assets as property belonging to the members individually. This question is fully discussed and so decided in *Coe* v. *Washington Mills, supra,* cited in the Brown case in support of the last quoted statement.

Appellants contend that there is some essential difference between the words ''charitable'' and ''benevolent'' as used in section 1313. We think there is no justification for any distinction as applied to the present case. (*Estate of Hinckley,* 58 Cal. 511; *Suter* v. *Hilliard,* 132 Mass. 412, [42 Am. Rep. 444]; *Bangor* v. *Masonic Lodge,* 73 Me. 434, [40 Am. Rep. 369].) The facts already stated show that the society was not formed for purposes properly definable as benevolent, but wholly to accomplish the plan embraced in the contract between it and its members, a contract based on a valuable consideration which the law deems adequate. The appellants seem to base their argument on this point in part on the idea that the bequest of Dol to the respondent was made from motives of benevolence. This may readily be conceded, but section 1313 does not declare that such bequests are void. **[6]** The fact that makes the bequest void

is that it is made to a charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses within thirty days before the death of the testator. The purpose in mind of the testator and his motive are alike immaterial.

The bequest under consideration here does not by its terms create any trust whatever. It reads as follows: "4th. I give and bequeath unto the French Hospital of the City of Los Angeles, the sum of five thousand dollars."

It is admitted that by the term "French Hospital" the testator intended to designate the respondent. [7] The legal effect of the bequest is to make the money the absolute property of the respondent and the language does not impose upon it any trust.

There is a suggestion in the briefs which indicates that there was some question concerning the capacity of the respondent corporation to take a bequest by will. Section 1275 of the Civil Code provides that corporations not formed for hospital purposes or certain other specified purposes cannot take under a will, unless expressly authorized by statute. Section 288 provides that the laws under which corporations existing at the time the code took effect were formed are applicable to all such corporations which do not elect to continue their existence under the code provisions as provided in section 287. As we have seen, the statute under which the respondent corporation was formed authorized it to take gifts of real or personal property. [8] As the corporation has not elected to continue under the code, this provision still remains in force with respect to this corporation. It follows that it has power to accept the gift in controversy, although by section 288 the act of 1850 and its amendments were repealed except as to corporations similarly situated to the respondent.

The order is affirmed.

Lawlor, J., and Olney, J., concurred.

Hearing in Bank denied.

All the Justices concurred.