## ST. LOUIS SOUTHWESTERN RY. CO. v. YATES, Tax Collector.

Circuit Court of Appeals, Eighth Circuit.
November 10, 1927. December 8, 1927.

No. 7697.

1. **Equity ⟐419—Where defendants denied receiving service or knowing of suit until after pro confesso decree, chancellor was justified in setting decree aside (equity rule 17).**

In suit against state tax assessing and collecting officials to restrain assessment and collection of taxes on hospital property, where defendants, with one exception, denied that they received service, although marshal's return showed service on them, or that they had ever heard or known about suit until after decree, court was justified in setting aside pro confesso decree under equity rule 17.

2. **Municipal corporations ⟐1028—States ⟐203—Taxation ⟐498, 611 (4)—State and city were properly permitted to intervene as defendants in action to restrain assessment and collection of taxes on hospital property (Const. Ark. art. 5, § 20).**

In action against state tax assessing and collecting officials to restrain assessment and collection of taxes on hospital property, state and city were proper parties and were properly permitted to intervene, notwithstanding Const. Ark. art. 5, § 20, providing that state shall not be made defendant in state courts.

3. **Taxation ⟐204(2)—State and statutory provisions allowing exemption from taxation must be strictly construed, and property claimed exempt must be clearly shown to be exempt.**

State and statutory provisions allowing exemption from taxation are to be strictly construed, and property sought to be exempted must be clearly shown to be within provisions of law.

4. **Taxation ⟐241(2)—Railroad company's hospital providing hospital and medical services for employees, supported by assessments, held not exempt from taxation; "exclusively for public charity" (Const. Ark. art. 16, § 5, subd. [h]).**

Railroad company's hospital, supported by assessments, based on wage-earning scale, collected monthly from employees, use of property being confined to employees of railroad company and its affiliated lines, held not exempt from taxation under Const. Ark. art. 16, § 5, subd. (h), since use was not "exclusively for public charity."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Exclusively Used.]

5. **Taxation ⟐598—Statute relating to fees of special counsel collecting taxes means that taxpayer is liable only for taxes, and that counsel fees come out of taxes paid (Acts Ark. 1923, pp. 130, 131, §§ 2, 5).**

Acts Ark. 1923, pp. 130, 131, §§ 2, 5, relating to compensation for services of special counsel appointed by Attorney General to collect taxes, means that taxpayer shall be liable only for taxes, and that compensation of special counsel shall come out of those taxes when paid, and that amount of such compensation may be fixed by Attorney General, if taxes are recovered without suit, or by court or judge trying case, where collection is by judgment.

6. **Taxation ⟐611(8)—Court may fix compensation to be paid special counsel appointed by Attorney General in action to restrain collection of taxes (Acts Ark. 1923, pp. 130, 131, §§ 2, 5).**

Under Acts Ark. 1923, pp. 130, 131, §§ 2, 5, court has authority, though it was not compel-

led, to fix compensation to be paid special counsel appointed by Attorney General in action against state tax assessing and collecting officials to restrain assessment and collection of taxes on hospital property.

**7. Taxation ⟨⇒611(7)—Where injunction proceedings have prevented tax assessment and collection within statutory time, court may extend time by order.**

Where taxing officials, by pendency of injunction, have been prevented from assessing, extending, and collecting taxes within the time required by law, a reasonable time may be fixed by order of court for the doing of such acts.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by the St. Louis Southwestern Railway Company against V. F. Yates, as Tax Collector of Miller County, Ark. A pro confesso decree was rendered, which was later set aside, and the State of Arkansas and another were allowed to intervene. From a decree dismissing the suit, complainant appeals. Affirmed, with instructions.

J. R. Turney, of St. Louis, Mo., and T. J. Gaughan, J. T. Sifford, J. E. Gaughan, and E. E. Godwin, all of Camden, Ark., for appellant.

H. W. Applegate and John L. Carter, both of Little Rock, Ark., and B. E. Carter, of Texarkana, Ark., for appellee.

Before STONE, Circuit Judge, and REEVES and OTIS, District Judges.

STONE, Circuit Judge. Appellant brought an action against the state tax assessing and collecting officials to restrain the assessment and collection of taxes on a hospital property located in Arkansas. A pro confesso decree was taken April 20, 1925, and on May 21st, following, no appearance having been made by any defendant to the suit, a decree granting a permanent injunction in accordance with the petition was entered. On September 17th, following, the state of Arkansas and the city of Texarkana filed applications to set aside the decree and permit them to intervene and make defense. This application was opposed but resulted in an order on October 21st, following, permitting such interventions and on October 28th, the court set aside the former decree. All of these proceedings were within the term in which the decree was entered. Thereafter, the other defendants filed answers, the cause was heard, the petition dismissed for want of equity on the merits and judgment rendered against

plaintiff for taxes then due. From this order of dismissal, this appeal is brought.

Four matters are presented on this appeal. One of them, a claim by appellees of res adjudicata, is unnecessary of decision in view of our determination of the three other points. [1] The first of these is that the court erred in setting aside its decree and permitting the parties thereafter to defend. This contention is that under equity rule 17, a pro confesso decree is deemed absolute "unless the court shall, at the same term, set aside the same or enlarge the time for filing the answer upon cause shown upon motion and affidavit." It is not disputed that sufficient motions were here made within the term but it is urged that the rule requires that cause shall be shown and that no cause was shown. The evidence is to the effect that the marshal's return shows service upon the taxing officials who were the only defendants at the time the pro confesso decree was entered. But those defendants, with one exception, deny having ever received such service or that they had ever heard or known about the suit until after the decree. One of the defendants claims that he found the summons after the decree but did not know it had been served before. We think this situation of the record would justify, though it might not compel, exercise of the discretion of the chancellor in favor of setting aside the pro confesso decree.

[2] The second point is that the court erred in permitting the state and the city of Texarkana to intervene and defend. It may be that neither of these two parties were necessary parties (though there is grave doubt that such is true in regard to the city) but, at any rate, they were proper parties. It is urged also, as to the state, that it could not be made a party under the Constitution of the state. Article 5, § 20, of that Constitution provides that "the state of Arkansas shall never be made defendant in any of her courts." We are not cited to any Arkansas Supreme Court decisions construing this section. We think it should be construed to mean that the state cannot be compelled to defend in any action in a court of that state, but that the state may voluntarily appear and ask to be made a party in any action, either in the state or the federal courts.

The third point is the important matter in this action. Article 16, § 5, subd. (h), of the state Constitution exempts from taxation "buildings and grounds and materials used exclusively for public charity." The property involved here is a hospital located in Tex-

arkana, Arkansas, with the usual appurtenant and useful personal property. This hospital and property is owned by the appellant, as trustee, and is owned and operated under a declaration of trust which defines its purposes, control, use, and sources of income.

The question here is whether this hospital and property are, under the terms of this trust, used exclusively for public charity within the meaning of the above quoted provision of the state Constitution.

[3] It is an established rule of construction that state and statutory provisions allowing exemption from taxation are to be strictly construed and that the property sought to be exempted must be clearly shown to be within the provisions of such law. Phœnix F. & M. Insurance Co. v. Tennessee, 161 U. S. 174, 16 S. Ct. 471, 40 L. Ed. 660; Bailey v. Magwire, 22 Wall. 215, 22 L. Ed. 850; Philadelphia, etc., R. Co. v. Maryland, 10 How. 376, 13 L. Ed. 461; 37 Cyc. 907, and citations in note 30 thereto.

With these rules of construction in mind, the character of usage of this hospital and property, as defined in the declaration of trust, may be examined. The substance of this trust declaration is that all of this property is held in trust by appellant "for the establishment and maintenance of a system of hospitals in order to secure and provide medical and surgical services for the officers and employés of it and its affiliated companies." The beneficiaries are defined as follows:

"Any bona fide officer or employé (including employés on agreed leave of absence) of the St. Louis Southwestern Railway Company of Texas, the Valley Terminal Railway, the Gray's Point Terminal Railway Company, the Paragould Southeastern Railway, the Central Arkansas & Eastern Railway Company, Pine Bluff, Arkansas River Railway, Shreveport Bridge & Terminal Company, Dallas Terminal Railway & Union Depot Company, Stephenville North & South Texas Railway, and any other railway company now or hereafter similarly affiliated with the trustee, shall be entitled to become and continue a beneficiary hereunder, so long as he or she remains in such employment and contributes to the trust fund as provided in the Code of Rules and Regulations, provided, that nothing herein shall limit the right of the trustee to extend the trust so that the same will embrace as beneficiaries the families of all employés of the companies, upon such terms and conditions as to it may seem fair and just."

It is also provided as follows:

"Leaving Service.

"Section 29. Inasmuch as contributors are entitled to all the benefits of the Hospital Trust, so long as they remain in the service of the Railroad Company there will be nothing returned when leaving the service, of the payments made into the fund.

"Section 30. Employés who leave the service of the Railroad Company, or the Hospital Trust, voluntarily, or who are discharged shall not be entitled to any benefits beyond the date of their voluntary or involuntary retirement; but will, upon making application therefor to the chief surgeon, *on the date their employment terminates*, be given treatment for disabilities incurred while so employed, and such treatment will be continued until they are discharged by the surgeons of the trust."

[4] Funds to support the institution are to be obtained by assessments, based on a wage-earning scale, collected monthly from the employees. There are other provisions which emphasize those above quoted or outlined but sufficient has been said to show the general plan of the trust to be that the use of the property is confined to the employees (and their dependents) of appellant and its affiliated lines. The public in general, nor any part thereof, nor any indefinite class have any right to any use in this property and it is in no wise supported by any charitable gifts or donations, but only by the direct beneficiaries thereof and by contributions, in the form of loans, from the railways whose employees are protected. In short, it is simply the familiar plan of a hazardous business providing hospital and medical services for those engaged therein. It seems to us that this is clearly not a usage "exclusively for public charity." We base the above conclusion on an independent construction of this provision of the Arkansas Constitution. However, there are certain Arkansas Supreme Court decisions which tend to support, if they do not compel the same conclusion. Those are Hot Springs School Dist. v. Sisters of Mercy, 84 Ark. 497, 106 S. W. 954; McDonald v. Shaw, 81 Ark. 235, 242, 98 S. W. 952; Fordyce v. Woman's Christian National Library Association, 79 Ark. 550, 96 S. W. 155, 7 L. R. A. (N. S.) 485. In all of these cases that court has held that to constitute a public charity within the meaning of this constitutional provision, the trust must be for the benefit of an indefinite class of persons. Another case, Arkansas Midland R. Co. v. Pearson, 98 Ark. 399, 135 S. W. 917, 34 L. R. A. (N. S.) 317, seems

closely analogous, if not directly in point. That case involved the liability of a railroad company for the negligent act of a physician employed by it under an arrangement similar to that provided by the declaration of trust in this case. In that case, the court (page 410 [135 S. W. 921]) said:

"It could not be said to be conducted as a charity, for only those employees who had contributed the fees deducted from their wages for its maintenance were entitled to enter there for treatment, and all the physicians and employees required to maintain and operate it were paid from such fund. Nor can it be said to have been administered by the railroad company out of pure philanthropy, since it may have had some benefit therefrom in decrease of amount of damages for injuries caused in the operation of the road, and the better and more efficient service to the company by its employees because of its maintenance."

Appellant claims that the above-quoted expression in the Pearson Case is a mere dictum but it seems that the character of the employment in respect to its being a public charity was there directly involved and therefore the above expression was a part of the decision proper and not merely dictum.

In other jurisdictions similar organizations have generally been held to be noncharitable. Board of County Comm. v. D. & R. G. R. Co. Employees' Benefit Association, 70 Colo. 592, 203 P. 850, 22 A. L. R. 902; Phillips v. St. L. & S. F. R. Co., 211 Mo. 419, 111 S. W. 109, 17 L. R. A. (N. S.) 1167, 124 Am. St. Rep. 786, 14 Ann. Cas. 742; Haggerty v. St. L., K. & N. W. R. Co., 100 Mo. App. 424, 74 S. W. 456. Also see Bangor v. Lodge, 73 Me. 428, 40 Am. Rep. 369; Coe v. Washington Mills, 149 Mass. 543, 21 N. E. 966; Young Men's Protestant Temperance & Ben. Soc. v. City of Fall River, 160 Mass. 409, 36 N. E. 57; Franta v. Bohemian Roman Catholic Cent. Union, 164 Mo. 304, 63 S. W. 1100, 54 L. R. A. 723, 86 Am. St. Rep. 611; Matter of Altman, 87 Misc. Rep. 255, 149 N. Y. S. 601.

The decree should be and is affirmed.

There has been filed in this court, by one of the attorneys for appellee, an application for an allowance of attorney's fees herein. This attorney was appointed as special counsel by the Attorney General of the state under authority of a statute in that state. Acts of Ark. for 1923, p. 129. This act provided for the employment, by the Attorney General, of special counsel to collect delinquent taxes.

Section 2 thereof is as follows (page 130):

"In all cases where the Attorney General may hereafter appoint special counsel under the provisions of this act, such special counsel shall receive a reasonable compensation for his services, dependent on recovery, to be fixed by the Attorney General, where collection is made without suit, and by the court or judge trying the cause where suits are instituted, which compensation shall, in no case be more than twenty-five per cent. (25%) of the amount recovered."

Section 5 is as follows (page 131):

"All moneys collected under the provisions of this act, less the compensation of special counsel fixed under authority of section two (2) hereof, shall be paid over promptly to the state treasurer who shall issue his receipt therefor to the Attorney General."

[5, 6] These are the only provisions of the act bearing upon the compensation of such special counsel. In neither of them is there any provision or even suggestion that such compensation shall be assessed against the delinquent taxpayer in addition to the tax due, either as a penalty or as expenses or as costs. The intent of the act seems to be that the taxpayer shall be liable only for the taxes, that the compensation of the special counsel shall come out of those taxes when paid and that the amount of such compensation may be fixed by the Attorney General (if taxes are recovered without suit), or by the court or judge trying the cause (where the collection is by judgment). So construing the statute, we think this court has authority, though it is not compelled, to fix this compensation to be so paid. As the Attorney General recommends to this court that the allowance be made "to be paid out of the amount recovered if the decree below be affirmed" and states "any allowance not to exceed 25 per cent. of the amount recovered, if any, would be considered satisfactory," we see no reason why we should not allow the application and assess such special attorney fees at 25 per cent. of the amount recovered. Therefore, the application is allowed and the compensation of such counsel fixed at 25 per cent. of the amount recovered herein, to be paid upon collection of such amount.

## Addendum.

Since the above opinion was filed, a matter has been called to the attention of the court which was overlooked in the preparation thereof and which should be determined

The final decree adjudged recovery, in specific amounts, for the taxes for the years 1923, 1924 and 1925. April 7, 1924, the trial court entered an order which, inter alia, restrained the taxing officials "from assessing any future taxes against said property, or extending any taxes against said property on the tax books of Miller county, Arkansas, until the final hearing and judgment of this cause, or until the further orders of the undersigned judge of the United States District Court, provided this injunction shall not become effective, until there shall be filed and presented unto the clerk of this court, a bond in the sum of five thousand dollars, with good and sufficient sureties, to be approved by the clerk of this court, conditioned that the St. Louis Southwestern Railway Company will pay all taxes now legally assessed against said property and all taxes that the court may in the future find to be just and due against the same, if it shall be finally determined that this temporary restraining order should not be issued, or in the event the said temporary restraining order shall be dissolved by the undersigned judge, or by any court having jurisdiction of this cause."

The bond required by this order was duly approved. The final decree (entered October 23, 1926), from which this appeal was taken, ordered that "the restraining orders heretofore issued in this suit be set aside and forever dissolved." An appeal was immediately allowed and the decree immediately superseded in a bond conditioned that appellant should "answer all damages and costs if it failed to make its plea." Thus, the taxing officials have been prevented by the orders of the court, induced by appellant, from assessing this property and extending and collecting the taxes thereon for the years 1926 and 1927 and we are informed that the time has now elapsed within which such assessment, extension and collection can be regularly made. [7] In this state of affairs, we deem it proper to instruct the trial court, upon receipt of the mandate hereon, to enter an order fixing a reasonable time within which the proper taxing officials may assess, extend and demand payment of taxes for the years 1926 and 1927, with a provision that if paid within 30 days of such demand, such taxes shall be without interest or penalty but if not so paid to bear such interest and penalty as may be provided by the laws of Arkansas as though the taxes had been due at the date of such demand. This order to be without prejudice to any right of recovery which may have arisen or may hereafter arise upon any of the bonds given in this litigation.