[Civ. No. 669. Fourth Appellate District.—October 28, 1932.]

In the Matter of the Estate of GRACE E. HUEBNER, Deceased. PAUL L. GILL et al., Appellants, v. E. H. JOLLIFFE, Executor, etc., et al., Respondents.

Flint & MacKay and Wesley L. Nutten, Jr., for Appellants.

E. H. Jolliffe for Respondents.

AMES, J., pro tem.—Grace E. Huebner executed a will dated February 11, 1928, which is as follows:

"Out of my estate I wish to give

| "Libbie Townsend Cortland, N. Y. | $1000 | |
|---|---|---|
| "Paul Gill | 2000 | |
| "Ida Gill | 1000 | |
| "Harry Gill | 1000 | |
| "Gussie Woodcock | 3000 | |
| "Mary I. Van Wie | 1000 | |
| "~~Kunie Ando~~ | ~~1000~~ | |
| "Dot Graber | ~~500~~ | $1000 |
| "Laguna Beach Art Galery | 500 | |
| "Merton E. Hill, Jr. | 500 | |

"Lauren M. Townsend, my father, $4000 outright and the interest for life on the remainder after the above bequests and my funeral expenses are paid. After his death I wish Paul Gill to have $2000 in addition to the first bequest and that the remainder be made into a fund, the interest of which shall be used to help defray the expense of educating some girl or boy in music or art. I appoint Paul Gill to have charge of selecting the recipient of this last bequest.

"I appoint Lauren ·M. Townsend and Mary I. Van Wie my Executor and Executrix, respectively without bond.

"GRACE E. HUEBNER,
"MARY I. VAN WIE."

On March 26, 1929, she executed a codicil to said will, which is as follows: "March 26, 1929. I wish to cancel the above bequest to Kunie Ando and instead add the $1000 that would have gone to him to the $4000 which I have left my father. I have also changed the amount left to Dot Graber from $500 to $1000. Grace Huebner."

Grace Huebner died on or about the eleventh day of November, 1929, and the will above referred to was thereafter admitted to probate in the Superior Court of San Bernardino County. Lauren M. Townsend, father of said decedent, died on or about the seventeenth day of May, 1931, and left a last will and testament which was subsequently admitted to probate in the Superior Court of San Bernardino County, and E. H. Jolliffe was duly appointed and qualified as the executor thereof. The said Lauren M. Townsend was the sole surviving heir and next of kin of Grace E. Huebner, and thereafter the executor of his will filed in the Superior Court of San Bernardino County a petition praying said court to determine the heirship of the deceased Grace E. Huebner and adjudge Lauren M. Townsend to be the sole heir at law of said Grace E. Huebner, and further adjudicate his rights to the residue of said estate upon its final distribution.

After a hearing thereon the superior court made and entered its decree adjudging that the clause in said will providing for and attempting to create a fund, the interest of which should be used to help defray the expenses of educating some girl or boy in music or art, was void

and that the residue be distributed to the executor of the will of Lauren M. Townsend, deceased. From that judgment Paul L. Gill and Sarah Elizabeth Langley have appealed.

■ Appellants contend that the clause in the will here in controversy creates a valid charitable trust. Respondents, on the contrary, contend that all of the elements necessary to the validity of a charitable trust are not present in this attempted bequest and that, therefore, the bequest must fail. In an early Massachusetts case a charity was defined as follows: "A charity in the legal sense may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an *indefinite number of persons,* either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works, or otherwise lessening the burdens of government." (*Jackson* v. *Phillips,* 14 Allen, p. 539, at 556.) (Italics ours.)

This definition has been adopted and followed by the courts of California in many decisions, some of which are hereinafter referred to. It will be noted that one element of the definition above quoted is that the gift must be for the benefit of *an indefinite number of persons.* Can the language in the will of Grace Huebner be construed as including such indefinite number of persons, or did the testatrix have in mind the education of but one girl or boy? If the latter was her intention, then we think that she has failed to create a charitable use. In *Estate of Dol,* 182 Cal. 159 [187 Pac. 428, 430], the court says: "One of the essential features of a charitable use is that it shall be for the public benefit, either for the entire public or for some particular class of persons, *indefinite in number,* who constitute a part of the public. The persons to be benefited must consist of 'the general public or some class of the general public indefinite as to names and numbers'." (Citing *Estate of Coleman,* 167 Cal. 214 [138 Pac. 992, Ann. Cas. 1915C, 682].) In *Russell* v. *Allen,* 107 U. S. 163 [2 Sup. Ct. Rep. 327, 27 L. Ed. 397], cited with approval in *People* v. *Cogswell,* 113 Cal. 129 [45 Pac. 270, 271, 35 L. R. A. 369], the Supreme Court of the United States, in referring to

charitable trusts, says: "They may be, and indeed must be, for the benefit of an indefinite number of persons, for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness which is one characteristic of a legal charity." And the court in the Cogswell case says: "A charitable trust or a charity is a donation in trust for promoting the welfare of mankind at large, or of a community or of some class forming a part of it, indefinite as to numbers and individuals." In *Estate of Sutro*, 155 Cal. 727 [102 Pac. 920, 923], after quoting the definition of a charity from *Jackson* v. *Phillips, supra*, the court says: "This definition, as applied to charitable perpetuities, must be read with the opening phrase constantly in mind, that the benefit is for 'an indefinite number of persons', and not for any particular person or persons, and it must be for all persons falling within a described class, indefinite in number." In *Estate of Graham*, 63 Cal. App. 41 [218 Pac. 84, 85], the court says: "Whatever may be the rule in other jurisdictions, the law of this state is settled without conflict that a charitable trust is constituted by a donation in trust for establishing or carrying on an institution dedicated to the welfare of the public or of some definite class or part of it."

Appellants contend that the phrase "some girl or boy" should be construed as "many". The word "some", argue appellants, only limits the number that will presently benefit by the bequest, i. e., the beneficiary for the time being.

If an ambiguity is apparent in this will and an interpretation is necessary, the following canons of construction, which were formerly a part of the Civil Code, but are now enacted in the Probate Code, would apply. "A will is to be construed according to the intention of the testator." (Civ. Code, sec. 1317, now Probate Code, sec. 101.) "When an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will." (Civ. Code, sec. 1318, Probate Code, sec. 105.) "All parts of the will are to be construed in relation to each other, and so as, if possible, to form one consistent whole." (Civ. Code, sec. 1321, Probate Code, sec. 103.) "The words of a will are to be taken in their ordinary grammatical sense, unless a clear intention to use them in another sense can be collected, and

that other can be ascertained." (Civ. Code, sec. 1324, Probate Code, sec. 106.)

Examining the will of decedent, in the light of these rules of construction, we find that in the bequests contained in the first portion of the will now under consideration, the testatrix used the phrase "wish to give", to the legatees therein named, the sums set opposite their respective names. These bequests are followed by the following clause: "Lauren M. Townsend, my father $4000 outright and the interest for life on the remainder after the above bequests and my funeral expenses are paid."

In the second bequest to Paul Gill she wishes him to have $2,000 in addition to the first "bequest", referring to the former gift by that name.

In the codicil she revokes the "bequest" to Kunie Ando, again referring to the former gift as a "bequest" and says the testatrix, "add the $1000 that would have gone to him to the $4000 which I have left my father".

The thought conveyed in all of the foregoing bequests is that of an absolute gift, subject to the life interest in Lauren M. Townsend "on the remainder".

But the phraseology employed in the bequest involved in this litigation does not convey that thought. After the death of Lauren M. Townsend she expressed the desire "that the remainder be made into a fund" the interest of which shall be used for the laudable purpose therein expressed. In this bequest alone she refrains from making a "gift" or a "bequest" and it is devoid of any expression conveying the thought that the title to the "remainder" shall vest permanently in any trustee or devisee.

It will be noted that the disjunctive "or" is used which, together with the succeeding sentence, attempts to vest in Paul Gill the power of exercising his own discretion as to the individual to be chosen. The singular number of each noun is employed. The word "some" is defined in Webster's New International Dictionary as: "A certain; one;—indicating a person, thing, event, etc., as not known individually or designated specifically;—often correlative to *another*, *other*, or *others*; as *some* man, that is some one man; . . . "
The testatrix further says: "I appoint Paul Gill to have charge of selecting the recipient of this last bequest."
Again the beneficiary is designated in the singular number

as the recipient. No idea of permanence is conveyed by the language thus used. The power of selecting the sole beneficiary is vested exclusively in one individual. If it were the purpose of the testatrix to create a charitable use, with Paul Gill as trustee, she failed to indicate who his successor would be, or how such successor should be chosen, and she also failed to designate by whom, or in what manner, the beneficiary should be chosen after Paul Gill has ceased to act. It may be that such failure, standing alone, would not be sufficient to defeat her purpose in creating a charitable use, if any such purpose existed, but that fact should nevertheless be considered in construing the language of the bequests and ascertaining her purpose.

The phraseology adopted by the testatrix in drafting her bequest itself negatives any idea of benefiting the public or "some particular class of persons, indefinite in number, who constitute a part of the public" (*Estate of Dol, supra.*) The dominant thought expressed in this attempted devise, and the only idea therein conveyed, was a desire that the interest from a certain fund should be used to help defray the expense of educating some individual to be selected by Paul Gill. For that reason we think the testatrix has wholly failed to create a charitable trust.

The judgment appealed from is affirmed.

Jennings, Acting P. J., and Marks, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court, of Appeal, was denied by the Supreme Court on December 22, 1932.