[S. F. No. 11511.  In Bank.—November 30, 1926.]

In the Matter of the Estate of ELIZABETH BRADY MOELLER, Deceased. JOHN MAHER et al., Respondents, v. LAIOGHIS HOSPITAL AND HOMES COMMITTEE OF PORTLAIOGHIS et al., Appellants.

[1] ESTATES OF DECEASED PERSONS—HOLOGRAPHIC WILL—ORDER ADMITTING TO PROBATE—CONSTRUCTION OF.—Where an instrument purporting to be a holographic will was written on both sides of a single sheet of paper, and upon application for probate thereof the probate court "ordered, adjudged and decreed that said document filed herein, purporting to be the last will and testament of" . . . "deceased, be admitted to probate as and for the last will and testament of said" . . . "deceased," the order must be construed as admitting to probate the whole of the instrument, written on both sides of the sheet, as the last will of the decedent.

[2] ID.—PETITION FOR DISTRIBUTION—ATTACK ON WILL—EVIDENCE.— In such a case, an attempt to show at the hearing of a petition for distribution of the estate that the writing on the reverse side of the paper was executed at a later date than the writing on the first page thereof, and was invalid by reason of its being without date, was an attack upon the order admitting ·the instrument to probate, and the order being final, the attack was without warrant of law; and the finding of the court that the writing on the back of the paper did not constitute a legal document, or a legal will, or a legal testamentary disposition of any kind, was not supported by the record.

[3] ID.—CLAIM OF LEGATEE—OFFER OF PROOF—DENIAL.—In such a case, where an institution claiming to be a legatee appeared upon the proceeding for distribution, made a claim and contested the right of others to share in the distribution of the estate, and offered to prove certain facts set forth in an affidavit,

---

2.  See 26 Cal. Jur. 1074; 28 R. C. L. 375.
    199 Cal.—45

and all the parties stipulated that the matter should be submitted to the court for decision and that the facts stated in the affidavit should be considered an offer of proof by said claimant and that the affidavit contained all the facts it could prove in its behalf, an order distributing the estate to others than the claimant and a finding that the portion of the will containing the bequest to this claimant was invalid, was in legal effect a rejection of the offer of proof and a denial of the right and opportunity to present proof of the facts set forth in the affidavit.

[4] ID.—MISTAKE IN NAME OF LEGATEE—WHEN IMMATERIAL.—The slight mistake in the name of a legatee in a will of "Mount Mellish Union Workhouse," instead of "Mount-mellick Union Workhouse," should not defeat a legacy in its favor.

[5] ID.—CHARITABLE INSTITUTIONS—SHOWING OF.—Where a legatee called Mountmellick Union Workhouse was, up to a certain time, under the control and management of a government agency named Mountmellick Poor Law Guardians and afterward under the control of the Laioghis Hospital and Homes Committee, the names of the agencies indicating that their objects and purposes were those of administering charity, it must be assumed that the legatee is a charitable institution.

[6] ID. — CHANGE IN MANAGEMENT OF INSTITUTION — CONTROL OF CHARITY.—The fact that a charitable institution named in a will as legatee was at the time of the execution of the will controlled by a certain government agency, but thereafter by law transferred to the control of another governmental agency, cannot defeat the legacy, there being no showing that there was any difference in the manner of conducting the charity or in its object or purposes.

[7] ID.—RIGHT OF PARTY TO RECEIVE BEQUEST.—Where a bequest was in favor of the "Mountmellick Union Workhouse," and it was shown to be a charitable gift, although the named legatee in itself was incapable of taking or holding property, it being a mere building and the premises used in connection therewith wherein the inmates are cared for, a government agency whose legal duty it is to direct and carry on the affairs of said workhouse and to have charge and dominion over its property, is the proper and legal body to receive said bequest.

---

(1) 4 C. J., p. 644, n. 48; 22 C. J., p. 103, n. 70; 40 Cyc., p. 1368, n. 50. (2) 40 Cyc., p. 1377, n. 17, p. 1378, n. 23. (3) 4 C. J., p. 72, n. 1. (4) 11 C. J., p. 331, n. 24. (5) 11 C. J., p. 307, n. 17 New. (6) 11 C. J., p. 332, n. 39 New. (7) 11 C. J., p. 332, n. 37.

4. Effect of misnomer of legatee, note, 47 L. R. A. (N. S.) 523. See, also, 26 Cal. Jur. 932.

APPEAL from a decree of distribution of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Reversed.

The facts are stated in the opinion of the court.

Wallace & Ames for Appellant.

David L. Levy, Lawrence L. Levy and Livingston & Livingston for Respondents.

CURTIS, J.—The deceased, Elizabeth Brady Moeller, died in the city and county of San Francisco on the sixth day of November, 1921. She left what purported to be a holographic will written on both sides of a single sheet of paper. On one side thereof was written the following: "Alameda, April the 22 1907 What ever is left after My Death and Buirel goes to My Nephew Peter Brady of Dublin Ireland Son of My Brother Peter Brady Who Belonged to the 48 Regement of the English Army enlisted at the Time of the Crimes War served 21 years and died in Dublin leaving one son everything goes to him Elizabeth Brady Moeller." The reverse side of said sheet of paper contained the following writing: "if My Nephew is Not Living it goes to Mount Mellish Union Workhouse where I was take care of when i was young and helpless in the Poor House Queens county Ireland. Elizabeth Brady Moeller."

There is no question but that all of the writing upon said sheet of paper was that of deceased. This paper was filed in the office of the clerk of the superior court of said city and county of San Francisco together with the petition of the public administrator of said city and county "praying for admission to probate of a certain document dated the 22nd day of April, 1907 . . . purporting to be the last will and testament of Elizabeth Brady Moeller, deceased." Thereafter, and on the eighth day of December, 1921, said superior court made an order by which it was "ordered, adjudged and decreed that said document filed herein, purporting to be the last will and testament of Elizabeth Brady Moeller, alias, deceased, be admitted to probate as and for the last will and testament of said . . . deceased." No contest was ever filed to the probate of said will, either be-

fore or after the order admitting same to probate. Upon the hearing of the petition for distribution evidence was admitted showing that Peter Brady, named in said will as a devisee thereunder, had died prior to the death of deceased. It was further proven upon said hearing that the respondents herein were her sole heirs at law, being children of her deceased brother, who died prior to her death. Evidence was also introduced at the hearing of the petition for distribution of a handwriting expert, who testified that the writing upon the reverse side of the sheet of paper upon which the will was written was later in date than the writing upon the other side, or first page, of said paper; and, basing a finding upon this evidence, the court found that the writing upon the reverse side of said paper did not constitute a legal codicil, or a legal will, or a legal documentary disposition of any kind. This finding was predicated upon the contention that the second page, having been written at a later date, and, therefore, at a different time than that on which the first page was written, and being without date, failed to meet the requirements of the statute defining a holographic will. The writing on the second page was accordingly held to be no part of the will of said deceased, and to be invalid as a testamentary disposition. The court further found that "there is not and never was any person, firm, entity, body, or corporation by the name or title of Mount Mellish Union Workhouse, or bearing any similar name or title, capable under the law of taking by will any property of the said decedent." The decree of distribution based upon these findings distributed all the property of said deceased to the respondents herein as the heirs at law of said deceased. From this decree the Laioghis Hospital and Homes Committee of Portlaioghis has appealed.

[1] The first contention of appellant is that the last will and testament of said decedent was the entire document filed in said court, consisting of the writing on the front and reverse sides of said paper, and that by the order admitting the will of said deceased to probate this entire document was the instrument intended and designated in said order and which was ordered and decreed therein to be the last will and testament of said decedent. Appellant accordingly contends that as no contest of said will was ever filed, the order admitting it to probate became final and binding

upon all parties affected by said will and that the court was
without any power thereafter to admit evidence upon the
hearing of the petition for distribution or at any other time
to show that the writing on the reverse side of the paper
was written at a different time than that on which the first
page thereof had been written and accordingly was invalid
on account of the failure of the testatrix to date the writing
on the reverse side of said paper. We will assume that if the
writing on the reverse side of the paper had been written at a
different date than that on the first page, and that the latter
bore no date, then it was fatally defective as an attempt to
make a testamentary disposition of property. The first ques-
tion, therefore, to determine is what document was admitted
to probate as the last will and testament of said deceased.
Was it the first page of said paper or was it the whole docu-
ment containing not only what was written on the first page,
but also what was written on the reverse side of said paper?
Neither the petition for probate of the will nor the certificate
of the proof and facts, found as required by section 1317,
of the Code of Civil Procedure, are contained in the record
on appeal. The order admitting the will to probate, however,
contains certain recitals and other language which, we think
in themselves are determinative of the question here in-
volved. In the first place the order admitting the will to
probate recites that "The petition of W. J. Hynes, etc., pray-
ing for the admission to probate of a certain document,
dated the 22nd day of April, 1907, and filed in this court,
purporting to be the last will and testament of Elizabeth
Brady Moeller, *alias* deceased." And again we find in said
order that "the court hereby finds the fact to be, that said
document is entirely written, dated and signed by the hand
of the said Elizabeth Brady Moeller herself," and finally it
is decreed in said order "that said document filed herein,
purporting to be the last will and testament of said Elizabeth
Brady Moeller, *alias*, deceased, be admitted to probate as and
for the last will and testament of said" deceased. The docu-
ment presumably at least referred to in said order must
have been the entire instrument, including the writing on the
first and second pages of the paper before referred to. Had
the court intended to limit said order to any particular por-
tion of said document, or had the court intended to designate
any portion of said paper as not being a part of the last

will of said decedent, we would expect some reference to such intention in the order itself. Finding none, we must conclude that the court by said order admitted the entire document to probate as the last will of said deceased. We are somewhat confirmed in this interpretation of said order by the action of the court admitting at the hearing of the petition for distribution evidence of the handwriting expert to the effect that the writing upon the reverse side of said paper was written at a later date than that on the first page thereof. Had the court considered said order as only admitting to probate the writing on the first page of said paper, then it would not have been necessary to have attempted to have shown on the hearing of the petition for distribution the illegality of the writing on the reverse side of said paper. By the admission of said testimony the probate court unquestionably considered that the whole document had been admitted to probate as the last will of said deceased. While we are not bound by the construction which the court placed upon its own order, yet when the same judge who signed the order admitting the will to probate thereafter admitted evidence for the purpose of showing that a portion of a document on file in said court, and claimed to be the last will, was illegal on account of its defective execution, we must conclude that the trial judge of said court considered that the alleged illegal portion thereof had been in the first instance admitted to probate as a part of the last will of said deceased. We must assume that the judge of the probate court knew better than anyone else what document he had in mind when he signed the order admitting it to probate as the last will of said deceased, and it is not unreasonable to conclude that when he later permitted evidence to be introduced which tended to invalidate a portion of said document that he considered that said document as a whole had been admitted to probate as the will of said deceased by his previous order. We think it, therefore, sufficiently apparent from the record before us that the document admitted to probate as the last will of said deceased was the entire writing of said deceased found on either side of the paper on file in the probate court. As the order admitting the same to probate was never appealed from, and no contest was ever filed to said will, said order

became final. (*Estate of Parsons*, 196 Cal. 294 [237 Pac. 744].)

[2] We think it follows without the necessity of any argument that the attempt to show at the hearing of the petition for distribution that the writing on the reverse side of said paper was executed at a later date than the writing on the first page thereof, and was invalid by reason of its being without date, was an attack upon a final order of the court and was without warrant of any law whatever. The finding of the court, therefore, that the writing upon the back of said paper does not constitute a legal document, or a legal will, or a legal testamentary disposition of any kind, finds no support in the record before us.

[3] The only other question in the case is as to the validity of the bequest made in the said will in favor of the Mount Mellish Union Workhouse. We have already referred to the finding of the court that there is no such person or corporation by that or any other similar name capable under the law of taking by will any property of the decedent. Upon the hearing of the petition for distribution the appellant appeared and contested the right of the respondents to share in the distribution of said estate. On said hearing appellant offered to prove certain facts, more particularly hereinafter set forth in the affidavit of Thomas Reilly. It was "stipulated by all parties that the matter of the distribution of the estate of said decedent should be submitted to the court for decision and that the facts stated in said affidavit should be considered as an offer of proof by Laioghis Hospital and Homes Committee; that said affidavit contains all the facts which said Committee could prove in its behalf; that in the event that the court should determine that said affidavit did not contain facts sufficient to entitle said Committee to distribution of any of the estate of the decedent, it should order distribution in favor of the said heirs at law; that if, on the other hand, the trial court should determine that the affidavit did contain facts sufficient to entitle said Committee to distribution of any of the estate of the decedent, it should thereupon announce its decision to that effect and a reasonable opportunity would be given said Committee to present legal and competent proof of the facts stated in said affidavit."

Said affidavit was as follows: "In the Goods of Elizabeth Brady Moeller, deceased. I, Thomas Reilly, the secretary of the Laioghis Hospital and Homes Committee, aged twenty-one years and upwards, make oath and say as follows:

"1. The Mountmellick Union Workhouse was a governmental institution created by statute, vested in, controlled and managed by, the Mountmellick Poor Law Guardians under the control of the late Local Government Board for Ireland. The institution was in existence for a period of nearly one hundred years. After the treaty signed between Great Britain and Ireland and ratified in December, 1921, all government property in Ireland became vested in the Provisional Government of Ireland, and all public Boards and Institutions were transferred to the control of the Provisional Government.

"2. For the purposes of economy and administration all Boards of Guardians of Ireland, including the Mountmellick Poor Law Guardians, were done away with, and all institutions in every individual county in Ireland formerly vested in and controlled by Poor Law Guardians were vested in and the control of the same transferred to County Hospital and Homes Committees by decree of Dail Eireann (the Irish Parliament) and by order of the Local Government Board for Ireland. Under these powers the Laioghis Hospital and Homes Committee assumed control of the Mountmellick Union Workhouse.

"3. By act of Parliament of Dail Eireann, the Irish Free State Parliament, called the Local Government Temporary Provisions Act 1923, previous acts and things done by the Provisional Government of Ireland were confirmed and under the said act the Laioghis Hospital and Homes Committee is the statutory body having control of and in which is vested the Mountmellick Union Warehouse.

"4. All legal documents to which public Boards, Committees or Councils in Ireland are parties are legally executed by such public bodies by the chairman of the said Board, Committee or Council affixing the seal of the said body in the presence of the members thereof. The power of attorney in this matter, signed by the chairman of the Laioghis Hospital and Homes Committee was duly and legally executed.

"THOMAS REILLY.

"Sworn before me at Maryborough in the Queen's County by said deponent Thomas Reilly who is personally known to me, on the 14th day of January, 1924.

"(Seal)          PATRICK J. MEEHAN, Notary Public."

The court, by ordering distribution of said estate to respondents and by its finding last above referred to, in legal effect, rejected said offer of proof by appellant and denied it the right and opportunity to present proof of the facts set forth in said affidavit. We think this offer of proof, if followed up by legal and competent evidence of the facts stated in said affidavit, sufficient to entitle the appellant to have distributed to it the residue of said estate. [4] It is true that there is a slight discrepancy between the true name of the beneficiary and that used by the testatrix in referring to it in her will. It is referred to in the will as Mount Mellish Union Workhouse and in the offer of proof, as set out in the affidavit of Thomas Reilly, as the Mountmellick Union Workhouse. We hardly think that this slight error in the spelling of the name of the beneficiary should defeat a legacy in its favor. In *In re Casement,* 78 Cal. 136, 141 [20 Pac. 362, 364], it was held where a bequest was made to "Old Ladies' Home of San Francisco" that "under the liberal rules of construction applicable to legacies to charitable institutions, the court might properly have distributed the money to" Protestant Episcopal Old Ladies' Home. In *In re Gibson,* 75 Cal. 329, 331 [17 Pac. 438, 439], it was held "if from the will itself, or evidence *aliunde,* the object of the testator's bounty can be ascertained, a misnomer of a legatee, or devisee, whether a natural person or a corporation, will not invalidate the provision."

[5] It is claimed, however, by respondents that it is necessary for appellant in order to be entitled to the bequest to show that the Mountmellick Union Workhouse is a charitable institution and that the offer of proof fails to show that fact. Conceding that respondents are correct in their contention that appellant can succeed to such bequest only by showing that the institution under its control is a charitable institution, we think that the offer of proof tended to show the charitable character of the said beneficiary. Up to the time its control was assumed by the agencies of the Irish Free State it was under the management of the Mountmellick Poor Law Guardians. Under the present govern-

ment of the Irish Free State the control is vested in appellant, the Laioghis Hospital and Homes Committee. The names of each of these agencies or boards of control, one the Poor Law Guardians and the other the Hospital and Homes Committee, fairly indicate that their object and purposes were those of administering charity, and we think we are justified in assuming from these names that the Mountmellick Union Workhouse is a charitable institution.

[6] It is next contended by respondents as the management and control of said workhouse has been by law taken from the Mountmellick Poor Law Guardians, acting under the Local Government Board for Ireland, as said board formerly existed at the date of the execution of said will, and transferred to appellant, whose power is derived from the Irish Free State Parliament, that it cannot be assumed that the testatrix intended that the property of her estate should ever be used for the benefit of said workhouse under such changed conditions and management. We see no force in this argument of respondents. At the time the will was executed, as we have already seen, the workhouse was a governmental institution created by statute and was administered by guardians under authority of a local government board. Subsequently, as shown by said affidavit, "For the purposes of economy and administration," a change was made in such management and all such governmental institutions were by statute placed under the control of poor law guardians. Under said statute the Laioghis Hospital and Homes Committee is the statutory body having control of and in which is vested the Mountmellick Union Workhouse. There is no showing whatever that there is any difference in the manner of conducting said workhouse or in the object or purposes thereof under the new committee than that which was in effect under the Mountmellick Poor Law Guardians. In fact, the affidavit of Thomas Reilly, above referred to, in effect negatives any intention to change the character of said institution or the manner in which it had formerly been conducted by providing a different legal agency to administer its affairs. Said affidavit shows that the change was brought about for the purposes of economy and the better administration of the institutions involved. It was the intention of the testatrix to aid by the bequest in her will the operation and maintenance of said poorhouse and

to better provide for the inmates therein, and no good reason has been shown or advanced by respondents, nor does any occur to us, why this intention on the part of the testatrix cannot be carried out as effectively under the present management as well as it could have been had the administration of the affairs of said workhouse still remained under the direction of the Mountmellick Poor Law Guardians.

[7]  Finally the respondents contend that as the bequest was in favor of the Mountmellick Union Workhouse, the appellant herein, the Laioghis Hospital and Homes Committee, is without any right to receive said bequest and had no standing in the probate court to contest the right of respondents to have the property of said estate distributed to them. As we have already seen, the bequest in favor of said Mountmellick Union Workhouse was a charitable gift.  Its purpose was to benefit the inmates of said workhouse and to assist in the maintenance and operation of the same in caring for said inmates.  The appellant offered to prove that it was the legal "statutory body having control of and in which is vested the Mountmellick Union Workhouse."  While the Mountmellick Union Workhouse is in itself incapable of taking or holding property, as we may assume from the affidavit of Thomas Reilly, it being merely a building and the premises used in connection therewith wherein the inmates are cared for, the appellant, according to said affidavit, is the agency established by the government, whose legal duty it is to direct and carry on the affairs of said workhouse and to have charge and dominion over its property.  As such, there is no question but that it would be the proper and legal body to receive said bequest.  The mere fact that the testatrix made the bequest in favor of the workhouse and not in favor of the committee legally in charge of said institution should not defeat said bequest.  A case similar to this arose in this state where the decedent made her will in favor of the Old Ladies' Home at St. Mary's Hospital.  It was proven to the satisfaction of the court that it was the intention of the testatrix to make said bequest in favor of a department in the St. Mary's Hospital called the Old Ladies' Home, the expenses of which had always been paid by the Sisters of Mercy, who also control said department.  The decree of distribution distributed the bequest to the Sisters of Mercy and the said decree was affirmed on appeal (*In re*

*Gibson*, 75 Cal. 329 [17 Pac. 438]). We think the same reason for the application of the rule in the above case applies to the bequest before us, and we conclude, therefore, that the court erred in denying the appellant the right to prove the matters set forth in its offer of proof under the stipulation of the parties made in reference to said offer, and that if the facts stated in said offer of proof are proven by legal and competent evidence, it will be the duty of the probate court to distribute said property to appellant.

The decree of distribution is reversed with directions to the probate court to permit appellant a reasonable opportunity within which to present proof of the facts set forth in its offer of proof as shown by the affidavit of Thomas Reilly, hereinbefore referred to.

Richards, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.