[Civ. No. 12289–S. Second Appellate District, Division One.—October 11, 1939.]

In the Matter of the Estate of PHILIP STEINMAN, Deceased. GEORGE PHILIP STEINMAN et al., Appellants, v. SCANDINAVIAN FAITH MISSION et al., Respondents.

Charles R. Thompson, Henry N. Cowan and Frank L. Richardson for Appellants.

N. B. Nelson for Respondents.

YORK, P. J.—On November 5, 1937, while waiting to have an abdominal operation performed at the Naval Hospital in San Diego, Philip Steinman executed an olographic will by the terms of which he bequeathed his entire estate to the Scandinavian Faith Mission and appointed the Bank of America National Trust and Savings Association executor of said will. Testator died on November 13, 1937, the executor qualified and the will was duly admitted to probate on December 3, 1937. On June 17, 1938, the appellants, who are a nephew and a niece of the testator, both residents of Kansas City, Missouri, filed their joint petitions to cancel the bequest to the Mission and to determine heirship, upon the grounds, among others, that the said Mission was a charitable or benevolent society or corporation; that the will was executed less than thirty days before the death of the testator; that petitioners were the proper, legal and, so far as known, the only living heirs of decedent, and therefore the bequest to the Mission failed because it fell within the purview of section 41 of the Probate Code, to wit:

"No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, by a testator who leaves a spouse, brother, sister, nephew, niece, descendant or ancestor surviving him, who, under the will, or the law of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least thirty days before the death of the testator. . . ."

It was stipulated between counsel that appellants would not be required to introduce evidence of their relationship to decedent, and also that the deposition of Hanna B. Moe might be taken by both parties. This deposition was practically the only evidence presented at the trial. The cause having been argued and submitted, judgment was thereafter ordered denying said petition to determine heirship, from which judgment this appeal is prosecuted by the heirs.

By the terms of his will dated November 5, 1937, testator disposed of his property as follows: "Second: I give everything of which I am possessed at the time of my death to the Scandinavian Faith Mission, 121 East Second St., Los Angeles, California.

"Third, I have no wife or living issue and no living parents and I have not see or heard from any of my relatives for about thirty-five years and for that reason make no provision for them"

Filed as the residuary legatee's exhibit No. 1, is a letter addressed to The Scandinavian Faith Mission, 121 East 2d Street, Los Angeles, California, reading as follows:

"San Diego, California, Naval Hospital,

"November 6, 1937

"The Scandinavian Faith Mission,

"Dear Superintendent

"I the undersigned have made my will to the Scandinavian Faith Mission, yesterday November 5, 1937, and the will is located at the Bank of America, 6th and Broadway, San Diego, Calif.

"I am in the Naval Hospital waiting an abdominal operation, in the next few days. So please pray for me, for I know the prayers of holy people availatheth much.

"My will, will always remain the same regardless of the results of this operation.

"Yours in Christ,

"PHILIP STEINMAN."

The deposition of Hanna B. Moe shows that she organized the Scandinavian Faith Mission on February 27, 1936, using for that purpose $400 which she had received from her father in Sweden; that no other person, church or organization is connected with her in the management, control or maintenance of the said Mission; that said affiant is a tailoress and has been employed as such for the past seven years by Mullen & Bluett of Los Angeles; that she pays the rent, owns the furniture and furnishings in the Mission, that the Mission operates under no by-laws or other regulation; has no board of directors or other managing board; that six meetings a week are held at which "we sing some songs and have prayer and read the Bible. Somebody gives message from the Bible, and people give testimony telling how they

have been converted and got on all right. Some have been converted in the Mission and some outside of the meeting;" that the people who attend the Mission meetings are "more the floating population that are traveling around and men usually without work, and some of them are drunkards". In response to the question "And what work do you do there personally, Mrs. Moe?" she replied: "I am usually there early to see that it is nice and clean and that the Mission is open, and then I usually help to begin the meetings and I am taking part in the meetings often, and then I see that the right leaders are there and if they aren't there I take the meeting myself. And I talk to the people and get acquainted with the people and try to encourage them."

It is also shown by the deposition that a free-will offering is taken at each meeting and that the funds so received are taken and paid out by Hanna B. Moe, personally, without consultation with anyone else; that most of the time such collections are insufficient to meet the expenses of the Mission and such deficit is made up by the affiant; that no funds are solicited from any persons or organizations and no funds are received from the Community Chest or any other organization. In answer to the question, "What charitable activities, if any, are conducted at the Mission?" she replied, "We do not do any charity work, only giving beds or meals like any one of you would do. And sometimes we give—if we give anyone anything I usually ask one of the men, in case somebody is asking for help or is hungry, I usually give them some money to some of the men at the Mission that I know and they go and buy a meal for them, or a bed. I don't dare to give the money because they might go and buy a drink instead." She also testified "The work that is done at the Mission . . . that was just trying to help the people to be better, and to be Christians and good citizens, and to support themselves and support their families if they have any." On cross-examination she said she ran the Mission just exactly as she wanted to; that she had no title; that the meetings consisted of prayers and a religious message from the Bible and singing; that the attendance was about one hundred persons per week and the meetings were open to all of Christian faith; that she selected a leader to conduct each meeting, occasionally a group from some particular church would take charge of the meeting; that she did not

know the testator personally and the first she knew about the will was when she received the letter, hereinbefore set out; that affiant's maiden name was Hanna Andreen, and that while some people referred to the Mission as the Scandinavian Faith Mission, others referred to it as Miss Andreen's Mission; that the people at the Mission referred to her both as Mrs. Moe and Miss Andreen; that her husband took no part in the management of the Mission; that the expenses of the Mission ran around $50 per month and that she made up the difference between the collections and the expenses; that she owned her own property and worked as a tailoress; that neither she nor her husband ever used any of the funds collected for the Mission for their personal use, and that her husband was a janitor in the Times building and worked nights.

In answer to the petition it was alleged as follows: "That at all times in said petition mentioned Hanna B. Moe was, and now is personally and exclusively conducting, operating and maintaining a private mission at No. 121 East Second Street, Los Angeles, California, under the name of Scandinavian Faith Mission, also known as the Scandinavian Christian Faith Mission the residuary legatee herein; that the said Mission so operated, maintained and conducted by the said Hanna B. Moe, is not affiliated or connected with any church or other religious organization; that it does not have any members or associates; that it does not have any board of directors, trustees or other managing board of any sort or description; that it is governed exclusively by the will of the said Hanna B. Moe; that all moneys received and disbursed by said Mission are received and disbursed solely and exclusively by the said Hanna B. Moe for whatever purposes she deems best."

Based upon the evidence adduced at the hearing of the petition, which consisted of the deposition, as aforesaid, the court, among others, made the following findings of fact:

"6. That it is not true that the Scandinavian Faith Mission now is, or was at any time in said petition mentioned, or ever was, at any time, a charitable or benevolent society . . . or ever was at any time, a charitable or benevolent corporation.

"8. That the legacy bequeathed by said will to the Scandinavian Faith Mission was not bequeathed or devised to the

said Scandinavian Faith Mission in trust for charitable uses, or in trust at all.

"9. That the legacy bequeathed by said will to the Scandinavian Faith Mission was not bequeathed or devised to Hanna B. Moe, or to any other person or persons in trust for charitable uses, or in trust at all. . . .

"11. The Court further finds that at all times in said petition mentioned Hanna B. Moe was, and now is, personally and individually conducting, operating and maintaining a private mission at No. 121 East Second Street, Los Angeles, California, under the name of Scandinavian Faith Mission, the residuary legatee herein; that the said Mission so operated, maintained and conducted by the said Hanna B. Moe is not a church, nor is it affiliated or connected with any church or other religious organization; that it does not have any members or associates; that it does not have any board of directors, trustees or other managing board of any sort or description; that it is governed solely and exclusively by the said Hanna B. Moe; that all moneys received and disbursed by said Mission are received and disbursed solely and exclusively by the said Hanna B. Moe for whatever purposes she deems best."

The trial court thereafter entered judgment decreeing the bequest in the will to the Scandinavian Faith Mission to be valid and in full force and effect, and that "the description of the residuary legatee Scandinavian Faith Mission be, and the same is hereby corrected and decreed to be 'Hanna B. Moe, conducting the Scandinavian Faith Mission, 121 East Second Street, Los Angeles, California'."

Appellant heirs here insist that (1) the Mission is a charitable or benevolent society within the meaning of section 41 of the Probate Code; (2) assuming that the bequest was intended to be made to an individual instead of to the Mission, the gift would be in trust for charitable uses (3) the court erred in substituting for a specifically named legatee an individual not named in the will.

From those portions of the deposition hereinbefore quoted, it clearly appears that Mrs. Moe is the *alter ego* of the Scandinavian Faith Mission which she has conducted at all times as her own private enterprise. Construing section 1313 of the Civil Code upon which section 41 of the Probate Code is based, the court in the *Estate of Hamilton*, 181 Cal. 758,

at 772 [186 Pac. 587], said: "Section 1313 of the Civil Code provides no limitation upon gifts in general for charitable purposes. *It places such limitation only upon gifts to charitable corporations or societies or in trust for charitable uses.*" By no stretch of the imagination could the Scandinavian Faith Mission be termed either a corporation or a society. To constitute the latter, it is essential that a number of persons unite together for some common purpose. It clearly appears from the record herein that Mrs. Moe was the moving spirit of the Mission, and if she were eliminated, the Mission would cease to exist; not only has she maintained full control and management of the activities of the Mission, but she has used her own money in carrying out her own plans with reference to such activities. It is therefore obvious that the findings of the trial court that the Mission is neither a charitable or benevolent society nor a corporation are fully sustained by the evidence.

In so far as the legacy to the Mission is concerned, by its terms it is absolute. No restrictions of any sort are imposed upon the legatee with reference to the manner in which the property bequeathed to it shall be used. For all that appears either on the face of the will or in the letter transmitted to the legatee by the testator just prior to his death, his intention may have been to reimburse the legatee for expenses previously incurred in carrying on the work of the Mission, rather than to continue such work in the future.

In *Estate of Dol*, 182 Cal. 159, at 167 [187 Pac. 428], it is stated: "The bequest under consideration here does not by its terms create any trust whatever. It reads as follows: '4th. I give and bequeath unto the French Hospital of the City of Los Angeles, the sum of five thousand dollars.'

"It is admitted that by the term 'French Hospital' the testator intended to designate the respondent. The legal effect of the bequest is to make the money the absolute property of the respondent and the language does not impose upon it any trust."

In order that a charitable use may come into existence, the will itself must provide that the money or property of the trust shall be used for the public benefit, or for some particular class of persons, indefinite in number, who are to be benefited by such charitable use. (*Estate of Hinckley,*

58 Cal. 457, 488; *Estate of Dol*, 182 Cal. 159, 164 [187 Pac. 428].)

Appellants cite the *Estate of McDole*, 215 Cal. 328 [10 Pac. (2d) 75], as authority for their contention that it is not necessary to the creation of a valid charitable trust that express words of trust be used. The cited case holds that a "devise to a *society or corporation organized for a charitable purpose* without further declaration of the use to which the gift is to be put, is given in trust to carry out the objects for which the organization was created". It is obvious that the cited case is not in point for the reason that it has reference only to a society or corporation organized for a charitable purpose, while the legatee in the instant case does not fall within either the classification of a society or of a corporation, and the purpose for which this meeting place is maintained can be ascertained only from the testimony of Hanna B. Moe, the *alter ego* of the said legatee.

Therefore, the said Scandinavian Faith Mission does not come within the purview of section 41 of the Probate Code.

 With respect to appellants' third point, to wit: That the court erred in substituting for a specifically named legatee an individual not named in the will, the trial court found upon competent evidence that "Hanna B. Moe was, and now is, personally and individually conducting, operating and maintaining a private mission . . . under the name of Scandinavian Faith Mission . . . that the said Mission so operated, maintained and conducted by the said Hanna B. Moe . . . is governed solely and exclusively by the said Hanna B. Moe; that all moneys received and disbursed by the said mission are received and disbursed solely and exclusively by the said Hanna B. Moe for whatever purposes she deems best." In accordance with said finding, it was adjudged that the description of the said residuary legatee be corrected and decreed to be 'Hanna B. Moe, conducting the Scandinavian Faith Mission at 121 East Second Street, Los Angeles, California'."

It is well-established law in this state that a gift will not be permitted to fail because of misnomer, misdescription, or ambiguity of description. Apropos of this, it was stated in *Estate of Brehm*, 116 Cal. App. 206, at 208 [2 Pac. (2d) 402]: "The mere fact that in drafting her will and in designating the several beneficiaries thereunder the testatrix used

the name by which the corporation legatee was ordinarily and commonly described, rather than the true or official name of such legatee, cannot defeat the wishes of the testatrix in that regard. Where by competent evidence the identity of the legatee is made to appear, the authorities are numerous in the declaration of the law that the intention of the testatrix as expressed in her will must prevail. (Sec. 1340, Civ. Code; *In re Gibson,* 75 Cal. 329 [17 Pac. 438], *Estate of Dol,* 182 Cal. 159 [187 Pac. 428], *Estate of Moeller,* 199 Cal. 705 [251 Pac. 311], and see *Gilmer* v. *Stone,* 120 U. S. 586 [30 L. Ed. 734, 7 Sup. Ct. Rep. 689, see, also, Rose's U. S. Notes].)''

In *Estate of Moeller,* 199 Cal. 705, at 715 [251 Pac. 311], the testatrix made a bequest in favor of the Mountmellick Union Workhouse and upon hearing of petition for distribution it was found by the court that there never was any person, firm, entity, body, or corporation by that name, or bearing any similar name or title, capable under the law of taking by will any property of said decedent. The decree of distribution based upon these findings distributed all the property of said deceased to the heirs at law of said decedent, from which the Laioghis Hospital and Homes Committee of Portlaioghis appealed. It was there held: ''While the Mountmellick Union Workhouse is in itself incapable of taking or holding property, as we may assume from the affidavit of Thomas Reilly, it being merely a building and the premises used in connection therewith wherein the inmates are cared for, the appellant, according to said affidavit, is the agency established by the government, whose legal duty is to direct and carry on the affairs of said workhouse and to have charge and dominion over its property. As such, there is no question but that it would be the proper and legal body to receive such bequest. The mere fact that the testatrix made the bequest in favor of the workhouse and not in favor of the committee legally in charge of said institution should not defeat such bequest.''

It is therefore the conclusion of this court that the trial court did not err in its ruling that the description of the residuary legatee be corrected and decreed to be Hanna B. Moe, conducting the Scandinavian Faith Mission.

The judgment appealed from is affirmed.

Doran, J., and White, J., concurred.