139 Cal.App.2d 178 (1956)
Estate of WILLIAM CARUCH, Deceased. WILLIAM WESTLAKE, Petitioner and Appellant,
v.
STATE OF CALIFORNIA et al., Respondents and Appellants.
Civ. No. 16575. 
California Court of Appeals. First Dist., Div. One. 
Feb. 14, 1956.
 W. A. Lahanier, R. P. Stimmel and John F. Gallen for Petitioner and Appellant. *180
 Edmund G. Brown, Attorney General, Wayne D. Hudson, Deputy Attorney General, Keil & Connolly, Donovan, Stuhr & Martin and Patrick E. Martin for Respondents and Appellants.
 PETERS, P. J.
 The State of California, William Westlake and John Mullen separately appeal from a decree determining heirship in the estate of William Caruch.
 William Caruch, on July 17, 1950, executed a witnessed will disposing of portions of his estate. This will was typewritten, signed and properly executed as provided in section 50 of the Probate Code. It contained no residuary clause. It is claimed that on November 1, 1952, the testator made, in handwriting, numerous changes and interlineations on the witnessed will. They consisted substantially of the following: At the top of the will the testator wrote the date, "Nov. 1st 1952." In the second paragraph the testator drew a line through the name of "William Westlake" and interlined the names of "Mr. and Mrs. Ben Harmon" as the recipients of a house at 124 Peru Street, San Francisco, and of certain personalty there located. In the same paragraph the testator reestablished William Westlake as the recipient of certain personal property, and made a bequest of a refrigerator to Ben Harmon. In paragraph fourth of the witnessed will John Mullen had been made the recipient of a 1941 Chrysler coupe, a 1929 Ford, and a Hamilton watch. The testator drew a line through the bequest of the Ford. In paragraph sixth the testator had left to Judy Mullen, described as age five, $1,000 in cash, and a certain table lamp. By the interlineations the testator changed the "five" to "seven," struck out the bequest of the table light, and after Judy's name added "Mrs Etta Mullen guardian." Paragraphs seven and eight, leaving bequests to certain persons not involved in these appeals, were completely stricken out. In paragraph tenth the testator had bequeathed certain articles of personal property to Ray Marc, including a 1950 Harley Davidson motorcycle. By the interlineation the testator crossed out the zero in 1950 and changed it to a "2," making it read a "1952 Harley Davidson motorcycle." Then at the end of the witnessed will, and just before the testator's signature, he added "any cash etc left over to go to Wm Westlake Redding Calif." There is no other signature than the one to the witnessed will. *181
 The testator died on May 18, 1953, and left no heirs surviving. Before his death the testator had sold the 1929 Ford, whose disposition to John Mullen in the fourth paragraph of the witnessed will had been stricken out, and had purchased a 1952 Studebaker. On one occasion, about two months before his death, the testator told Mullen that he would "be driving this car in six months--I won't be living." To other witnesses the testator stated, on various occasions, that he did not want the state to get any portion of his estate.
 On June 1, 1953, the will, as modified by the interlineations, was offered for probate. The petition describes the proffered will as "a certain document, dated July 17, 1950, purporting to be his last will and testament, together with certain changes, interlineations, deletions, and additions thereto, dated November 1, 1952." The will, with its interlineations, was filed with the court. It was admitted to probate by an order dated June 16, 1953. This order recites that the petition of John Mullen, named as executor in the will, for the admission to probate "of a certain instrument filed in this Court purporting to be the last Will and Testament of said deceased" having been considered by the court, the court finds that the facts set forth in the petition "are true." Then the court orders that "the certain instrument dated July 17, 1950, heretofore filed with the Clerk ... purporting to be the last will and testament of the above named deceased be admitted to probate as the last will and testament of said deceased."
 No contest of the order admitting the will to probate was instituted by any interested party. On February 2, 1954, more than six months after the will was admitted to probate but before final distribution, William Westlake, a legatee under the witnessed will and under the will as modified by the holographic interlineations, petitioned the probate court to determine the respective interests of the legatees in the estate. Most of the legatees named in the witnessed will and in the holographic interlineations filed claims, as did the State of California, the latter claiming that a portion of the estate escheated to the state. On the hearing of this petition before the same judge who had admitted the will to probate, the main question presented was whether the holographic changes were valid. In its decree establishing heirship the probate court found:
 "That on November 1, 1952, the decedent with testamentary *182 intent, wrote in his own hand on the face of his witnessed will dated July 17, 1950 at the beginning of page one thereof the date of November 1, 1952. He then at the time of writing said date made changes, cancellations and additions including a residuary clause on the face of said instrument on said date in his own hand and intended to and did adopt his signature already present on said instrument as his signature to said changes, cancellations and additions and said instrument of July 17, 1950, together with said changes, cancellations and additions on the face thereof was validly admitted to probate by this Court on the 16th day of June, 1953, as the Last Will and Testament of the decedent."
 "That said changes, cancellations and additions on the face of the said witnessed will dated July 17, 1950 constituted a valid codicil to said will. ... That said codicil was entirely written and dated on November 1, 1952, in the hand of the testator and signed by him by his adoption of his signature already present on said will dated July 17, 1950." The court thereupon decreed that the property be distributed in accordance with the terms of the witnessed will as modified by the holographic changes, cancellations and additions. It is from this decree that the State of California, William Westlake and John Mullen separately appeal.
 It will be noted that the decree appealed from is based on two theories. It is first held that the holographic modifications constituted a valid holographic codicil to the witnessed will, and then it is held that the will, as modified by the holographic modifications, had been admitted to probate on June 16, 1953. Before we can even consider the problems involved in determining the validity of the holographic modifications we must first determine whether those problems are now before us. This depends, in part at least, on the legal effect and interpretation of the order of June 16, 1953, admitting the will to probate. This is so because no contest was filed to test the validity of the will after the will was admitted to probate. Such a contest must be filed within six months after admission to probate. (Prob. Code, 380.) When no such contest is filed, section 384 of that code provides that the "probate of the will is conclusive" with certain exceptions not here relevant. Thus, it becomes very important to determine what document was admitted to probate by the order of June 16, 1953, the validity of which became "conclusive" against all parties here involved.
 The order of June 16, 1953, recites that the facts set forth *183 in the Mullen petition for admission of the will to probate "are true," and orders that the "instrument dated July 17, 1950, heretofore filed with the Clerk of the above entitled Court, purporting to be the last will and testament of the above named deceased be admitted to probate." Nothing is directly stated in the order about the holographic changes. Certainly there is no language stating that the interlineations are excluded. While the order refers to the instrument "dated July 17, 1950," which is the date of the witnessed will, it also refers to the will filed with the clerk of the court, which was the witnessed will plus the holographic changes, and also finds the facts alleged in the Mullen petition to be true. That petition alleges that the witnessed will, plus the holographic changes, is the last will of the decedent, and prays that that document be admitted to probate. [1] The conclusion is inescapable that by the order of June 16, 1953, there was admitted to probate not only the witnessed will, but also that will as modified by the holographic changes. This conclusion is strengthened by the fact that the petition to determine heirship under section 1080 of the Probate Code was heard and determined by the same judge who had admitted the will to probate, and in the heirship proceeding that judge expressly found that the holographic changes had been admitted to probate by the order of June 16, 1953. This fact is significant. In Estate of Moeller, 199 Cal. 705 [251 P. 311], there was presented for probate a holographic instrument written on both sides of a sheet of paper. The court admitted to probate the "document filed herein." No contest was filed. Upon distribution, the same judge who had admitted the will to probate, admitted evidence to the effect that the back side of the document had been written at a later date than the front side. The probate court, on the distribution, so found and held the back page of the document invalid, being undated. This was reversed by the Supreme Court. It pointed out that on the distribution proceeding the same judge who admitted the will to probate interpreted his first order as admitting both sides of the document to probate, but assumed that he could reconsider that order on the distribution proceedings. At page 710 the Supreme Court stated:
 "... While we are not bound by the construction which the court placed upon its own order, yet when the same judge who signed the order admitting the will to probate thereafter *184 admitted evidence for the purpose of showing that a portion of a document on file in said court, and claimed to be the last will, was illegal on account of its defective execution, we must conclude that the trial judge of said court considered that the alleged illegal portion thereof had been in the first instance admitted to probate as a part of the last will of said deceased. We must assume that the judge of the probate court knew better than anyone else what document he had in mind when he signed the order admitting it to probate as the last will of said deceased, and it is not unreasonable to conclude that when he later permitted evidence to be introduced which tended to invalidate a portion of said document that he considered that said document as a whole had been admitted to probate as the will of said deceased by his previous order. We think it, therefore, sufficiently apparent from the record before us that the document admitted to probate as the last will of said deceased was the entire writing of said deceased found on either side of the paper on file in the probate court. As the order admitting the same to probate was never appealed from, and no contest was ever filed to said will, said order became final. (Estate of Parsons, 196 Cal. 294 [237 P. 744].)"
 "We think it follows without the necessity of any argument that the attempt to show at the hearing of the petition for distribution that the writing on the reverse side of said paper was executed at a later date than the writing on the first page thereof, and was invalid by reason of its being without date was an attack upon a final order of the court and was without warrant of any law whatever."
 This opinion is controlling in the instant case. [2] This conclusion makes it unnecessary to determine the validity of an attempted augmentation of the record made by the parties to this appeal. The augmentation consists of a portion of the oral proceedings on the hearing of June 16, 1953. It is requested that this court on this appeal from the decree establishing heirship consider the oral proceedings on the petition for admission of the will to probate in order to determine what the trial court meant to include by its order of June 16, 1953. [fn. *] We cannot properly consider these proceedings. *185 Under rule 12(a) of the Rules on Appeal a proper augmentation is limited to the "original or a copy of a paper, record or exhibit offered at or used on the trial or hearing below and on file in or lodged with the superior court." The rule also permits portions of the oral proceedings to be transcribed and transmitted to the appellate court, but obviously refers to oral proceedings before the trial court in the proceeding involved on the appeal. The law is well settled that the proceedings involved on the admission of a will to probate are separate and distinct from a proceeding to determine heirship under section 1080 of the Probate Code. (Estate of Parsons, 196 Cal. 294 [237 P. 744].) This being so, under rule 12(a) it would be improper for this court to consider a reporter's transcript in a proceeding separate from the one involved on the appeal.
 This brings us down to the basic question involved, and that is whether, in a proceeding to determine heirship under section 1080 of the Probate Code, instituted more than six months after the will has been admitted to probate, the parties can challenge the due execution of holographic changes to a witnessed will already admitted to probate.
 [3] The general rule is clear. Once a will has been admitted to probate, if no contest is instituted within the statutory time, the due execution and attestation of the will, together with any question affecting the validity of the will, have been conclusively determined.
 The pertinent code sections are as follows:
 Probate Code, section 380, provides: "When a will has been admitted to probate, any interested person, ... may, at any time within six months after such probate, contest the same or the validity of the will. ..."
 Probate Code, section 384, provides: "If no person contests the validity of a will or of the probate thereof within the time specified in this article, the probate of the will is conclusive; saving to infants and parties of unsound mind who were not made parties to the proceeding a like period of six months after their respective disabilities are removed." (Italics added.)
 Probate Code, section 1080, as it read at the times here involved, provided: "When the time to file or present claims against the estate has expired, and a petition for final distribution has not been filed, any person claiming to be an heir of the decedent or entitled to distribution of the estate *186 or any part thereof may file a petition setting forth his claim and praying that the court determine who are entitled to distribution of the estate. ..."
 Under these sections it is settled that, in a proceeding under section 1080 of the Probate Code to determine heirship, the parties may not challenge the validity of a will, more than six months after that will has been admitted to probate. The due execution, attestation and validity of the will have been conclusively established. (Estate of Blalock, 95 Cal.App.2d 463 [213 P.2d 100].)
 One of the leading cases on this subject is Estate of Parsons, 196 Cal. 294 [237 P. 744]. In that case the testator had drawn a pencil line through certain bequests. The petition for probate made no mention of these cancellations, and the court admitted to probate the will as originally drafted. No contest was filed within the statutory time. Thereafter, on petition for partial distribution, it was claimed that the bequests through which the line had been drawn had been revoked. The Supreme Court held (p. 299): "The probate procedure of this state contemplates in the administration of the estates of deceased persons a series of different proceedings, each of which is separate as to the matters embraced within its purview. An adjudication as to each step in this series is intended to be final in its nature, and not subject to review in a subsequent stage of the administration of the estate. An order admitting a will may be appealed from, or the admission of the instrument to probate may be contested, and the validity of the will attacked within one year [amended now to six months] after such probate, but an attack on the order, or a contest of the validity of the whole or of a part of the will, is not a direct attack merely because made or instituted in some proceeding connected with the administration of the same estate. ..."
 "The attack aimed at the will of the decedent Parsons by the respondent was made in response to a petition for partial distribution filed more than one year after the will was admitted to probate--an independent and wholly distinct proceeding from that for the probate of the document. It is, therefore, a collateral and not a direct attack. ... The issue thus joined was one which could properly have been raised upon the proceeding for the probate of the will. Not having been so raised, and more than one year having elapsed since the order was made, the instrument admitted is now conclusive evidence as to the intent of the testator." *187
 In Estate of Moeller, 199 Cal. 705 [251 P. 311], discussed above, upon distribution it was shown, and the trial court found, that the back page of the holographic will that had been admitted to probate in its entirety, had been written at a different time than the front page, and was undated. The Supreme Court reversed the decree of distribution which had held that the back page of the document was invalid, because it "was an attack upon a final order of the court and was without warrant of any law whatever." (P. 711.)
 Under these cases the due execution and validity of the will are determined at the time the will is admitted to probate. If no contest is filed within the time set forth in section 384 of the Probate Code, those determinations are final and conclusive. [4] The proceedings under section 1080 of the Probate Code are separate and distinct from those to admit the will to probate. In such a proceeding due execution and validity of the will cannot be collaterally attacked. All that the court has power to do in such a proceeding is to interpret the will that has been admitted to probate--it cannot again pass on the questions of due execution or validity. This was the precise holding in Estate of Salmonski, 38 Cal.2d 199, 207 [238 P.2d 966]: "[W]hat documents go to make up a will must necessarily be determined in the first instance on application for probate; and determinations so made have the effect of judgments and become conclusive in the course of time. ..."
 "[I]t is clear here that in the absence of an appeal, the order admitting the two documents to probate after contest now stands as a conclusive adjudication of their status as a will and a codicil thereto; but beyond consideration for the determination of that precise issue of what documents constituted the deceased's last will, questions of construction and interpretation in measure of the effect of the two documents one on the other were 'appropriate matters for consideration and determination' in the instant heirship proceeding." (See also Estate of Sargavak, 41 Cal.2d 314 [259 P.2d 897]; Estate of Challman, 127 Cal.App.2d 736 [274 P.2d 439].)
 [5] Under these rules even the admission of forged wills becomes conclusive. (Tracy v. Muir, 151 Cal. 363 [90 P. 832, 121 Am.St.Rep. 117]; Estate of Davis, 136 Cal. 590 [69 P. 412]; State v. McGlynn, 20 Cal. 233 [81 Am.Dec. 118].)
 [6] There is a very limited exception to this rule to the *188 effect that if the order admitting the will to probate is void on its face it may be collaterally attacked at any time. In such a situation an attack under section 1080 of the Probate Code would be proper. This exception is strictly limited. The defect must be patent and not latent and must appear without question in the order or judgment under collateral attack. [7] Thus, if a will that is unsigned is admitted to probate it may later be collaterally attacked. (Wall v. Wall, 123 Pa. 545 [16 A. 598, 10 Am.St.Rep. 549].) The reason for this rule is that the probate court, although having jurisdiction over the estate and the parties, has no jurisdiction to admit to probate a will that shows on its face that it does not comply with statutory requirements.
 The exception to the general rule was applied in Texas Co. v. Bank of America, 5 Cal.2d 35 [53 P.2d 127]. There an administrator was appointed and he executed a lease of estate property. The court, in appointing the administrator, did not follow the statutory provisions. A collateral attack was made on the order of appointment, it being contended that the lease was invalid because the administrator's appointment [fn. *] was in violation of the statutory provisions. The court held that the appointment order could be collaterally attacked. In so holding the court stated (p. 39): "Probate proceedings being purely statutory, and therefore special in their nature, the superior court, although a court of general jurisdiction, is circumscribed in this class of proceedings by the provisions of the statute conferring such jurisdiction, and may not competently proceed in a manner essentially different from that provided. [Citations.] ... Jurisdiction sometimes means authority over the subject-matter but it also frequently means authority to do the particular thing done. [Citation.] Although jurisdiction over the subject-matter of the estate authorized the appointment of an administrator, yet, since various provisions of the Code of Civil Procedure provided the exclusive method for the exercise of such authority, an appointment contrary to the applicable provisions would be in excess of the court's jurisdiction. ..."
 "The same presumption as to jurisdiction attaches to decrees in probate proceedings upon collateral attack as to other judgments of the superior court, as a court of general *189 jurisdiction. [Citation.] To be attackable collaterally for lack of jurisdiction the order must be void on its face and it is not void on its face unless the record affirmatively shows that the court was without jurisdiction to make the order. [Citation.] If the record discloses that the court had no jurisdiction to make the order of appointment, then it is void and can be attacked at any time. [Citations.] ... A judgment void on its face is a nullity and all acts performed under it are void."
 In Estate of Strobeck, 111 Cal.App.2d 853 [245 P.2d 317], the court used the following language in reference to a factual situation entirely different from the one here involved, but which is applicable to the exception under discussion (p. 859): "As an additional reason for granting relief under section 473 it should be noted that the requirements for the execution and attestation of a will are set forth in section 50 of the Probate Code and there is no right to make testamentary disposition except upon compliance with those provisions. [Citation.] In the instant case the record shows without question that the trial court ... admitted the 1950 will to probate without proof of execution and attestation as provided by the statute. Under such conditions, the order admitting the document was in excess of the court's jurisdiction and void [citations] even though the trial court had jurisdiction of the subject matter of the estate." (See also Estate of Eikerenkotter, 126 Cal. 54 [58 P. 370].)
 But for this exception to the rule to apply the invalidity must appear on the face of the record. In other words, does the will admitted to probate show on its face that portions of it are illegal? For the purposes of this discussion we may assume that, were the question of validity before us, a serious question as to validity would be presented. [8] While a holographic will, under some circumstances, may incorporate by reference nonholographic material (Estate of Atkinson, 110 Cal.App. 499 [294 P. 425]; In re Soher, 78 Cal. 477 [21 P. 8]; Estate of Plumel, 151 Cal. 77 [90 P. 192, 121 Am.St.Rep. 100]; Estate of Anthony, 21 Cal.App. 157 [131 P. 96]; Estate of Young, 123 Cal. 337 [55 P. 1011]; In re Shillaber, 74 Cal. 144 [15 P. 453, 5 Am.St.Rep. 433]), a holographic codicil may not integrate a typewritten will without violating the rule that a holographic will must be wholly written, dated and signed in the hand of the testator (Estate of Dumas, 34 Cal.2d 406 [210 P.2d 697]; Estate of *190 Bernard, 197 Cal. 36 [239 P. 404]; Estate of Thorn, 183 Cal. 512 [192 P. 19]; Estate of Rand, 61 Cal. 468 [44 Am.St.Rep. 555]; Estate of Bower, 11 Cal.2d 180 [78 P.2d 1012].) In the present case, such does not appear on the face of the will. While a date--November 1, 1952--appears at the top of the will, there is nothing on the face of the document to show, without question, that the holographic changes thereafter appearing were written on that date. Obviously, the holographic changes could have been added to the typewritten will before it was executed. If so, of course, they became part of the witnessed will. Thus, the order admitting the witnessed will, together with the holographic changes, could have been proper. Since such a reasonable possibility exists in this proceeding, under the general rule already discussed, we must conclusively presume this question was raised and passed upon at the time the document was admitted to probate.
 The present case is not unlike Estate of Parsons, 196 Cal. 294 [237 P. 744], discussed above. There both pages of a holographic instrument were admitted to probate. Thereafter, in a collateral proceeding, it was shown by expert testimony that the back page had been written later than the front page. The back page was undated. Thus, in a sense, the invalidity of the back page appeared on the face of the document. Nevertheless, the court held that this question could not be raised in a collateral proceeding. The case is very close, factually and legally, to the present one. The underlying theory of the Parson case is that since the document was not obviously and without ambiguity invalid, its validity could not be attacked collaterally. That is our case precisely.
 For the foregoing reasons we hold that the order of June 16, 1953, admitted to probate the will of July 17, 1950, together with the holographic changes; that such order, when not contested within 6 months, became final and cannot be collaterally attacked; that the attack under section 1080 of the Probate Code is a collateral attack; that such attack must fail unless the invalidity of the document appears, without ambiguity, on the face of the will; that such illegality does not here appear. That being so, the trial court in this proceeding, although it incorrectly attempted to pass upon the validity of the document, correctly held that the witnessed will, together with its holographic changes, had already been *191 admitted to probate. That being so, and since the document so admitted is not invalid on its face, the order admitting it to probate is conclusive.
 The order determining heirship is affirmed.
 Bray, J., and Wood (Fred B.), J., concurred.
NOTES
[fn. *] *. A consideration of the oral proceedings on this appeal actually would benefit none of the parties to this appeal. These oral proceedings fail to disclose whether the probate judge did or did not intend to include the holographic changes in his order. Thus, in any event, we are relegated to the order itself in determining its legal effect.
[fn. *] *. In a direct attack, on appeal, on the order of appointment by different parties the appointment was held invalid because violative of statutory requirements.