[Civ. No. 24206. Second Dist., Div. Three. June 17, 1960.]

Estate of ARCHIBALD WHITE ROBERTS, Deceased. VIRGINIA LEE ROBERTS, Appellant, v. PAUL CRANDALL ROBERTS et al., Respondents.

*Assigned by Chairman of Judicial Council.

Harold D. Kraft for Appellant.

Harold L. Green for Respondents.

BISHOP, J. pro tem.*—The problem presented by this appeal is the interpretation to be given a home-made will as affected by two do-it-yourself codicils. In its order deter-

---

*Assigned by Chairman of Judicial Council.

mining heirship the trial court decreed that the widow of the testator, the appellant, was bequeathed property constituting only a small part of the estate; that the rest should be divided equally among the five children of testator and a former, deceased, wife. We are reversing the order to enable the trial court to correct it in one particular.

To understand the dispute, we should have certain provisions of the will and parts of the codicils before us. These suffice: "It is my desire that I be buried beside my beloved wife IMA CHILLSON ROBERTS. . . .

3

"The family has purchased nine (9) new lots in a group in Glen Haven Cemetery, two of which have been reserved for myself and Ima Chillson Roberts. She, having pre-deceased me, will be moved to the new lot in Glen Haven Cemetery.

"ARTICLE TWO:

"I declare that I have re-married, July 30, 1948, to Virginia Lee Conway, a widow, and that I have five (5) living children: Horace Dow Roberts, son; Paul Crandall Roberts, son; Dorothy Ellen Boekker, a daughter; Sydney Viola Lurcott, a daughter; and Jean Joyce Sheldon, a daughter; who shall share equally in my estate acquired previous to my marriage to Virgian Lee Conway, all of which was community property to which I obtained title by joint tenancy after Ima Chillson Roberts' death.

"ARTICLE THREE:

"To Virginia Lee Roberts, my present wife, I leave all my personal effects, consisting of home furnishings, silverware, paintings and objects of art, bric-a-brac, and whatever of value in our present home now at 4916 Colfax Avenue, North Hollywood, California. Also, I leave to Virginia Lee Roberts, all cash deposits in savings bank, all stocks and bonds, which I may possess at my demise.

"ARTICLE FOUR:

"All of the rest, and residue of my estate of whatsoever kind and whatsoever situate, I give, devise and bequeath in equal shares to my said five (5) children. . . ."

■ To the will, witnessed April 3, 1954, the testator fashioned a codicil in his own handwriting beginning: "Oct. 30th 1956 . . . I Arch. W. Roberts . . . desire to make a codicil to my will . . . ." His name appears nowhere else in this codicil, but this was sufficient. (*Estate of Glass* (1958), 165 Cal.App.2d 380, 384 [331 P.2d 1045, 1048], which cited

the case of *Estate of Bloch* (1952), 39 Cal.2d 570, 572-573 [248 P.2d 21, 23], with its many citations.) In the codicil this explanation appears: "This Codicil relates to Article No-3 to Property left to my present wife consisting of money in Savings Bank Stocks & Bonds.

"I have at present 3 accounts in Saving Banks—2 of them are accts for the Estate—Viz. Bank of America Saving Acct No-12635. The other at The First Federal Savings & Loan. Hollywood Calif. Acct No. 19965. . . .

"The 3rd acct referred to in Article 3 of the Original Will is money I have earned and saved above our taxes & living. That acct at present is in the Valley Branch Glendale Savings & Loan . . . acct No. 8129 . . . .

"This savings acct is in Joint Tenancy. . . ."

A second codicil, also in the handwriting of the testator, was dated January 19, 1957, signed twice, at the end, followed by the words "Attest this signature by . . . witness" and a signature, probably that of a witness, but of one only. In this codicil we find the testator declaring: "I wish to state that in my last Will in Article No. 3. of Will I bequeathed to my wife all moneys in Savings Bank, The First Federal of Glendale. This I wish to be as I willed, as it is money we have earned and saved above our living since 1947.

"Since that date of making my Will I have sold some property and have Placed the proceeds in two Savings Accts to wit Bank of America North Hollywood Calif. No. of Acct is 12635 and First Federal Savings & Loan of Hollywood Account No. 19965

"The funds of these two Accts with 2 Notes secured by first Trust Deed on Real Estate of $5500.00 each which are in the Bank of America North Hollywood, Calif. for Collection, shall be placed in my Estate to be distributed to my Legal heirs according to my last Will."

Reading these three documents together, we find very little, if any, ambiguity, or uncertainty that gives us trouble. If all that we had in the will, itself, was Article Two, we might be a bit puzzled just how the separate property of the testator was to be divided. But that is not all that we have; Articles Three and Four leave no doubt whatever of the testator's purpose. The rule of construction with which our profession is familiar in the subject of contracts, and of statutes, prevails here. ▮ It is thus stated in *Estate of Johnston* (1956), 47 Cal.2d 265, 269 [303 P.2d 1, 4]: "A will must

be read as a whole, and all parts thereof must be construed together in relation to each other to form, as far as possible, a consistent whole.'' Applying this rule, we find that no question remains; those things listed in Article Three were to go to the wife of the testator, appellant here; everything else was to go, in equal shares, to his five children. There is nothing in Article Two that clashes with this conclusion; its slight uncertainty is clearly resolved.

Which brings us to note that Article Three left to the wife of the testator ''all cash deposits in savings bank. . . .'' While no uncertainty lurks in the words themselves, the use of the singular ''bank'' would cause wonder if it developed that there were savings deposits in more than one bank. The testator evidently realized this, and so wrote the codicil of October 30th, explaining that there were actually three such accounts, which he identified, adding that ''2 of them are accts for the Estate,'' that the ''3rd acct referred to in Article 3 of the Original Will'' was in Glendale Savings and Loan, placed in joint tenancy and so (we add as he found it unnecessary to do), it is not being disposed of by his will. (See *Estate of Wolfe* (1957), 48 Cal.2d 570, 575 [311 P.2d 476, 478].) No attempt is made, in this codicil, to direct where the first two were to go. It is quite evident that the testator considered his reference, in Article Three, to ''all cash deposits in savings bank'' to apply to the two savings accounts numbered 12635 and 19965 as well as to ''The 3rd acct referred to in Article 3 . . . .''

Without mentioning his first codicil, the testator penned his second, as already noted. Again savings accounts numbered 12635 and 19965 are referred to. We find no provision expressing the testator's desire to change the interpretation he placed upon the will in the first codicil. It is conceivable that he may have wished to make plain, as he did, that he willed the Glendale Savings Bank account to his wife, and to have declared, as he did not, that he did not will to her, but to his children, the other two savings accounts. But there is no statement that can be so interpreted. This sentence certainly does not express such an idea: ''The funds of these two accts with 2 Notes . . . of $5500.00 each which are in the Bank of America . . . for Collection shall be placed in my Estate to be distributed to my Legal heirs according to my last Will.'' (We have omitted the two interlineations of no consequence here.) Extrinsic evidence was admitted, not particularly addressed to the meaning of the

codicils, but which, if pertinent, could be used to settle any uncertainty. Reading it over we find no basis for the conclusion that "deposits in savings bank" in the will, which became accounts in three savings banks in the codicil, became moneys in the First Federal of Glendale only, as a result of the January 19th codicil.

The second codicil was good only as a holographic instrument, as it was not executed with two witnesses. It may be seriously doubted, therefore, that its attempt to provide that the savings accounts and notes were "to be distributed to my Legal heirs according to my last Will," was at all effective, for, to determine what the distribution was to be, the typewritten will had to be considered. (See *Estate of Caruch* (1956), 139 Cal.App.2d 178, 188-190 [293 P.2d 514, 521].) But here again we have a doubt that need not be resolved, for whatever the conclusion that would be reached, the result is the same; the savings accounts and the notes will be distributed "to my Legal heirs according to my last Will," either as a result of the will or of the codicil.

The conclusions reached, up to this point, seem rather certain. By the will, as interpreted by the codicils, the widow of the testator was to receive, either as a joint tenant, or by the will, not only the testator's personal effects, but also the three bank accounts in existence at the time of the republication of the will (Prob. Code, § 25), by the last effective codicil. We see no tenable theory on which it can be held that the two notes at the bank mentioned first in the second codicil were to go to her, as they can not be said to be either cash deposits in savings banks or stocks or bonds.

In its findings and conclusions of law, given effect in its order determining heirship, the trial court reached and gave effect to a conclusion differing from ours, respecting the bank deposits. It found that the reference in the will to "cash deposits in savings bank, as modified by the codicil of April 19, 1957, . . . referred to moneys in the First Federal of Glendale only. . . ." As we have already indicated, in stating our conclusions, we can not find, in the January 19th codicil (doubtless the one the trial court meant to refer to), any justification for so limiting the reference in the will to "deposits in savings bank"; the last word was meant to be plural as were two of the three preceding words. This will not make a great difference in the result, but a substantial difference, as it may affect the two "cash on deposit" items in the inventory.

We find nothing in the record to make us suspicious, but it is possible that the conclusion of the trial court may have been based on the premise that the two accounts, numbered 12635 and 19965, were, in effect, a continuation of property in existence when the will was drafted and which, then, was to go to the children. This premise would, of course, not be a sound one; property that has been converted into cash and the cash deposited in a bank, no longer is governed by the provisions of a will dealing with property as against a provision dealing with a bank account. (*Estate of Babb* (1927), 200 Cal. 252, 255-258 [252 P. 1039, 1041].)

Instead of undertaking ourselves to modify the findings and conclusions and the order based on them, we deem it best to reverse the order with directions to the trial court to amend its findings of fact and conclusions of law and to make a new order determining heirship in conformity with this opinion.

Vallée, Acting P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 10, 1960.